Gaston, J.
 

 The two first exceptions, taken by the defendant in this cause, appear to us clearly untenable, and have, indeed, been virtually abandoned by his counsel. But the third exception deserves a particular examination.
 

 The presiding Judge upon the trial directed the attention of the jury to the enquiry, whether the evidence
 
 established
 
 the fact of a parol gift of the slaves in dispute, made in the
 
 *365
 
 State of South Carolina; and, upon that enquiry, he especially instructed them to ascertain, whether in the conversation between the defendant and the plaintiff in South Carolina, as set forth in the deposition of Joseph Adams, the defendant declared an intent then and there to give these slaves to the plaintiff, or only admitted that he had previously so given them; and that, to fix the meaning of this conversation, they should also take into consideration all the other evidence given in the cause — and then added, that, if they ascertained that the defendant thus made a gift in South Carolina, the plaintiff was entitled to recover; but if they collected no more than an admission by him of a previous gift in North Carolina, the plaintiff was not entitled to recover. The specific objection .taken to this instruction is, for that there was no evidence before the jury, upon which they could find a gift then made.
 

 The conversation referred to is thus stated: The parties were together at the plantation of the plaintiff in South Carolina, in the latter part of the year 1837, and the negroes in dispute were then present and in the possession of the plaintiff, when the defendant told the plaintiff, that he (the defendant) had no .claim to the negroes or the other property that had been sent to his (the plaintiff’s) wife. The defendant said'that the negroes were the property of the plaintiff; that the plaintiff might dispose of them as he saw proper-, and that the defendant had no claim to them.
 

 It is to be regretted that the witness had not stated circumstantially all that occurred in this conversation. It cannot be doubted but that it was a mutual conversation, and what passed therein on the part of the plaintiff might well elucidate the words of the defendant, to which, or to the substance whereof, this witness has undertaken to depose. But be this as it may, we feel ourselves bound to say, that what was thus said was not in low evidence of a gift then made of the ne-groes.
 

 The common law, on the subject of gifts of chattels, is, wc are informed, the law of South Carolina with respect to gifts of slaves, and by that law a gift of chattels may be made by parol. But it is the settled rule of the common law, that to
 
 *366
 
 a parol gift of chattels, delivery of the chattels is an indis-Ponsable re(luisite. 1° l^e elementary books the doctrine is thus expressed: “Grants or gilts of chattels personal,” says Blackstone2nd Com. 441 — “are the act of transferring the right and the possession of them, whereby one man renounces and another man immediately acquires all title and interest therein, which may be done either in writing, or by word of mouth
 
 attested by sufficient evidence,
 
 of which the delivery of possession is the strongest and
 
 most
 
 essential.” Chancelk>r Kent in his- lectures, 2nd Kent’s Com. 438, lays down the rule thus; “Delivery is essential, both at Law and in Equity, to the validity of a parol gift oí a chattel or a chose in action, and it is the same whether it be a gift
 
 inter vivos
 
 or
 
 causa mortis.
 
 Without an actual delivery the title does not pass.” In delivering the opinion of the Supreme Court of New York, in the case of
 
 Noble
 
 v
 
 Smith,
 
 2d Johns. 52, this eminent jurist, then the Chief Justice of the csuct, traces this .rule up to the time of Bracton, by whom it is laid down in precise terms. In the case of
 
 Ward v
 
 Turner, 2nd Yes. sr. 431, which has been i;.garded as a leading case in all donations
 
 mortis causa,
 
 it was most emphatically declared by Lord Hardwicke, that an actual delivery is indispensable to vest the property, if the subject of the gift be capable of delivery — and where it is not, there must be a delivery of something, which is altogether equivalent to an actual -delivery-of the thing itself. The ground ©f his Lordship’s decision is, that
 
 bythe
 
 Jaw of England the delivery-of .things, which lie in livery, is indispensable to a gift, and, in adopting from the civil law donations
 
 mortis causa, the English 'law
 
 admitted them only, when they conformed to this inflexible rule, and were accompanied by delivery. To shew this, he referred to Swinburne who is explicit on the point. Swinb. 17, 22, 23. The doctrine established in
 
 Ward
 
 v
 
 Turner
 
 has been recognized as undoubted law, and has been applied also to cases of gifts
 
 inter vivos
 
 in
 
 Tate
 
 v
 
 Eibbert, 2
 
 Ves. Jun. 111—in
 
 Antrobusv Smith, 12
 
 Ves. 39—and in
 
 Bunn v Markham., 7
 
 Taun. 224. In
 
 Ivans
 
 v
 
 Smallpiece, 2
 
 Barn. & Ald. 351, (a case of-gift
 
 inter vivos,)
 
 it was laid down by Abbot, Ch. Justice,
 
 *367
 
 that “by the law of England, in order to transfer property by gift, there must be cither a deed or instrument of gift, or
 
 there must be
 
 an actual delivery of the thing given to the donee,” and IIolroyd, Justice, in expressing the same opinion, uses this language: “ in order to
 
 change the property
 
 by a gift of this description, there must be a
 
 change of possession”
 

 It may be thought unnecessary to adduce authorities in support of a doctiine, which, as a general rule, has not been controverted, but these may be of use assliewing the extent of the rule, and tending to throw light upon a supposed exception to the rule, which is set up by the counsel for the plaintiff. It is admitted that the general rule may well apply, where the donor has possession of the thing to be given, and, therefore, can transfer the thing and the possession ol it together; but it is insisted that, where the possession is already in the donee, and, therefore, a transfer of possession cannot be made, delivery is necessarily dispensed with, and the property may pass by unequivocal woids of direct gift. In support of this alleged exception, no authority is produced, and, so far as our researches extend, none, which we are bound to respect, can be found. Nor are we led to adopt it by the compendious argument which has been urged. Finding the rule settled, that delivery is indispensable to a gift, we inter that, where delivery may not be given; the transfer to be effectual must be made otherwise than by gift. If there cannot be a delivery, there cannot be a gift, In the law of real property, a feoffment is defined the gift of a fief or feud, and to its validity it is essential that the possession of the fief should be formally delivered by the feoffor to the feoffee. This act is called livery of seisin, and without it even a deed of feoffment will not pass a freehold. If there be a tenant in possession, it is competent for him, who has the estate or right in the land, to transfer it to the tenant, but not by a feoffment or a gift without livery. He must do it by another mode of conveyance, appropriate to that state of the possession. He may release his estate or right, and when, by virtue of such release, it becomes united with the seisin or possession of the tenant, then the release operates
 
 *368
 
 either
 
 to
 
 enlarge
 
 the
 
 estate of tbe tenant, or to
 
 pass
 
 or extinguish the estate or right of the releasor. The analogy between dispositions oí real and personal property is not complete; for there may be a gift of chattels by deed, and a delivery of the deed renders the transfer effectual. But when there is no deed, the analogy prevails generally. Thus a chattel may pass by gift, but to this gift a delivery or transfer of the possession is indispensable, If the chattel be in the possession of him, to whom a transfer of the right or interest of another is desired to be made, the latter cannot make it by a gift without delivery, but he may do it by a sale or other appropriate mode of transferring interests and rights which do not lie in livery. When rules of property are once settled, it is not necessary, before we yield them obedience, that we should perceive the reasons upon which they are established. It is understood that the distinction between feoffments and releases of real estate is founded mainly on feudal principles, and it is believed that the distinction between gifts of chattels, and sales or releases of interest in them, is derived from considerations of public policy. ■Where property is claimed under a transfer purely gratuitous, unautheutiented by any formal instrument, there ought to be unequivocal evidence of a deliberate and final purpose of gift in the supposed donor. Now words, indicating- a purpose of immediate bounty, may have been inadvertently uttered, or words, intended to express a purpose of future kindness, may be misunderstood or misrepresented, as declarations of immediate bounty. Some act, therefore, or some instrument, evincing deliberation and completeness of purpose, and manifesting an intent to be carried into immediate execution, is very properly required to prevent imposition. Without delivery, a parol gift is, in law, but a promise to give, which, being without consideration, is not obligatory.
 
 Picot
 
 v Sanderson, 1 Dev. 309. A
 
 transfer
 
 of the property is required — and “ an
 
 intention to give
 
 is not a
 
 gift.” Hooper
 
 v
 
 Goodwin,
 
 1 Swans. 485.
 

 The case before us strikingly illustrates the wisdom of the rule. The negroes were present and in possession of the plaintiff, who held them, either as his own property or as
 
 *369
 
 the bailee of the defendant. Certain words used by the de fendant in a conversation with the plaintiff in relation to these negroes, admitted to be of equivocal import, and con-stitnting but part of that conversation', and extracted therefrom without the context, are left to the jury as evidence of a donation of the negroes, if upon the whole' testimony they believe these words import a present intention to give,- and do not refer to a former invalid attempt to give. Now it is very probable that the words had another and a very different meaning. They seem to import rather a renuncia* tion of title, or the declaration of a purpose in the defendant to renounce his title — and it may have been that they were used as an artifice, by which' the more easily to accomplish the father’s purpose of carrying his daughter back to her an* cient home. Is it not obvious how exceedingly unstable would be the title to property, if it were to pass or not to pass from man to man, according to the interpretation, which might be put upon loose terms, imperfectly remembered, of inaccurately represented, not fully set forth, arid,- at the best,susceptible of many different meanings'? Is it not wise to require some unequivocal act or authentic instrument — some' form or some ceremony, easy of observance, and unambiguous in its character, to manifest the intent of the parties and to give effect to a transaction of so much importance? We do not hold that a
 
 manual
 
 tradition of the negroes was necessary; but, to give these words the operation of a gift, we are bound
 
 to
 
 say an
 
 actual delivery
 
 is necessary. There is no prescribed form for such a delivery, more than there is for the delivery of a deed, but an act is required in each case, by which the
 
 possession
 
 of the thing delivered — whether it be a chattel or a deed — shall be
 
 transferred
 
 from the donor or grantor to the donee or grantee. An old case,
 
 Flower’s case,
 
 reported Noy. 67, of which there is a note in Viner, Title Gift, letter A, may serve to explain this position. “ A borrowed of B £100, and at the day brought it in a bag, and cast on the table before B, and B said to A, being his nephew,
 
 1 will not have it, take it you, and carry it home again with you;
 
 Per Curiam;
 
 “
 
 this is a good gift by parol, being cast upon the table, for then it was in the possession of B,
 
 *370
 
 and A might well wage his law. But'it had been otherwise if A had only offered it to B, for then it was a chose in action only, and could-not be given without a writing.” So, this case, if the plaintiff had surrendered the slaves to the defendant, so as to put them into his possession, or it was shewn that the slaves were then regarded as in the possession of the defendant, and thereupon the defendant had restored them to the plaintiff, accompanied by the words used, this might have been a good gift by parol, for this return of the slaves would have been a delivery. But the witness deposed to no act nor- circumstance whatever, shewing or tending to shew any change of possession. Such as the possession was
 
 before
 
 the conversation, it remained during the conversation, and continued ever afterwards, until the defendant took away the negroes, for which act he is
 
 sued
 
 as for a conversion of the plaintiff’s" property, alleged to have been made his property, by that conversation-.
 

 We agree with his Honor, that, if a gift Had- been made in South Carolina, effectual by the laws of that State, to pass the title of the negroes, they became thereby the negroes of the plaintiff, and the laws of this State will respect that title, and enforce his rights acquired thereby. There is nothing in the transaction which would violate ourpolicy. In requiring gifts of slaves to be made in writing, our law looks only to gifts made in
 
 this State,
 
 and regulates
 
 such transactions
 
 as matters of internal policy. It h aves to the other States to regulate transactions
 
 of
 
 that character occurring among them, according to their notions of expediency. Nor is there any reason to suppose that, in an executed contract or an absolute gift, the parties had in contemplation any other law than the law of the country where the thing was done. They intended the act to be effectual. They certainly meant it to be effectual, where it took place; they looked to no other place especially, but presumed that the rights, acquired where the act occurred, would be protected in every country, where rights of that kind are recognized.
 

 We think that his Honor erred in instructing the jury, that they should find for the plaintiff, if they collected or were satisfied from the testimony of Joseph Adams, as ex
 
 *371
 
 plained by all the other-testimony in the case, that, in the conversation deposed to by him, the defendant intended then and there to give the negroes to the plaintiff — for an intention to give, however distinctly declared, .is not, in law, a gift, if it be declared by parol and be unaccompanied by an .act of delivery.
 

 Per Curiam. Judgment reversed, and a new-trial directed.