Ruffin, C. J.
 

 The answer and the deposition of Mrs. Ann A. Smith, in support of it, state the original transaction, out of which this controversy arose, as if the right of property in Young’s bond vested in Alexander Smith, at least
 
 *275
 
 to the amount of $600. Upon that supposition, they out that the surrender of their interest in the bond was a valuable consideration for the promise, which, they say, was made to them by the testatrix, to leave them an equal sum in her will.
 

 Upon that statement even, it would be a question, whether what Miss Smith said was intended, or was understood by the other parties as a promise, amounting to a binding contract, or was not merely a vague declaration of an intended bounty, on which the other parties, from their relation to this single lady, and their intimate association with her, relied for a more valuable acquisition than the bond itself, or her promise, strictly speaking, to leave them as much at her death.
 

 The latter is rendered extremely probable, as the truth of the case, from the testimony of Dr. Graham and Mrs. Hicks; especially the latter, who says, that the defendant expected a large part of his aunt’s estate by her will, unless he alienated her affection. In that belief, and with the view to please and keep in with her, he probably made the relinquishment, and, if so, he ought not to set up the expectation of a bounty on his part, as an obligatory contract on the part of the aunt. Had such a contract been intended, it can hardly be supposed that ■ some distinct and permanent evidence of it by a written memorandum, would not have been framed at the time, or, or at least, a disinterested witness called to it.
 

 But if it were otherwise, and the most precise parol promise had been proved to have been made by Miss Smith, it would not have supported the action the defendant brought against himself in the name of his mother-in-law, if it had been duly defended. It is a mistake to suppose, that any right in the debt is vested in Alexander Smith, in virtue of the memorandum, on the bond or on the execution. As to the latter, nothing appears except the statement in the answer, that on the execution an endorsement appears, “ that $600 of the judgment was transferred to Alexander Smith.” Even if that be true, it would transfer no legal interest, nor
 
 *276
 
 be obligatory, in Equity, as it would be an assignment without consideration. But a clear answer is, that the answer does not intimate that the entry on the execution was the act 0f -^jsg gmith, or by her authority. Of course, then, that amounts to nothing. Then, as to the memorandum on the bond itself. It is clear from the testimony of Mrs. Mary Smith, who was present when it was made, took the bond out of the repository of the testatrix, for the purpose, and replaced it after the memorandum was made, that it was without any valuable consideration, and, at most, was intended as a donation causa mortis, and that even that failed from an intrinsic defect in point of law, and also from the recovery of the donor from the illness in which
 
 the gift
 
 was made. The better opinion seems to be, that
 
 donatio causa mortis
 
 cannot be by deed, without delivery of the thing, even where the death of the party takes place; because, the instrument is to be considered testamentary, and may be proved as such, and delivery is indispensable, either actual or implied, to complete such a gift. Williams’ Ex’ors. 504. 1 Roper Leg. 12. Here the gift was certainly not intended to take effect but on condition of the death of the donor, and in the illness under which she then labored. For that reason, it failed.
 
 Tate
 
 v Hilbart, 2 Ves. jr. 120. The donor did not part with the dominion over the bond, nor did she intend to do so during her life. For that reason, also, this gift failed, as a
 
 clonatio causa mortis. Bunn
 
 v Markham, 7 Taunt. 231. There a person wrote on the parcels of property, the names of the persons for whom they were intended, and requested a person to see them delivered to the donees, from which appeared a clear intention, that they should pass; yet it was held that they did not, for want of delivery. There was no delivery to this donee, nor to any person
 
 for him,
 
 nor was any intended in the life-time of the donor, but only after her death. Therefore, also, the gift could not be valid. In truth, then, the botid in question belonged wholly to Miss Smith without the assent of Mrs. Smith and the defendant, and to use the expression of Miss Smith, as proved by Mrs. Smith, those per
 
 *277
 
 sons have lost nothing by their relinquishment, although they got no legacy from Miss Smith. Tf she made such a promise as the defendant alleges, it was clearly upon an ignorance and mistake of her rights, and without the color of a consideration; for she was without any relinquishment from the other parties, the undoubted absolute owner of the bond in equity as well as at law. Such is the law, upon the supposition, that Mrs. Mary Smith gives a true account of the transaction. That she does, no doubt can be entertained. She had full knowledge of the transaction throughout; and there is no attempt to discredit or contradict her. She is supported by the evidence of James W. Smith as to the statements of it by the testatrix herself, and, most especially, by the testimony of Beasly, a brother of Mrs. Ann A. Smith, and a witness for the defendaut, who states, that the testatrix constantly claimed the bond as her own,' on the ground that she had only given it upon the condition of her death in that illness, and that Mrs. Smith knew it, and the latter made no denial of the statement, but afterwards told her brother that she had relinquished, contrary to his advice, because she could live without it, if the testatrix chose to take back what she had once given. Now it is remarkable, that, although Mrs. Mary Smith states positively, that Mrs. Ann A. Smith and all the family knew the purpose of making the memorandum on the-bond, and although Beasly states Miss Smith’s declarations on that point, and Mrs. Ann A. Smith’s admissions of their truth, yet neither the defendant in the answer, nor Mrs, Ann A. Smith, in her deposition, gives the least intimation of the occasion or intention of making that transfer, as they call it. Neither of them ventures on the slightest denial of the testimony of the other witnesses, as to those facts, but are themselves entirely silent on them,
 
 We
 
 cannot but impute their silence to their inability to deny those facts; since it cannot be supposed that they deemed them unimportant, or had forgotten them after they had entered so frequently into the discussions between the parties, touching their rights to the bond.
 

 
 *278
 
 The court holds, therefore, that the bond of Young, or any interest in it, never belonged to Alexander Smith or any other person but the testatrix; and, consequently, that the gUpp0ge(j promise of the testatrix, on which the action was brought against the defendant, if such promise was made, was not sufficient to sustain the action, but was merely void.
 

 . It is however said, that the defendant is protected by the judgment against him. Certainly, an administrator who honestly defended a suit is to be protected by the judgment obtained against him
 
 per testes
 
 and
 
 in invito,
 
 although the claim, on which the judgment was founded, may have been unjust.
 

 For
 
 the administrator has done all he
 
 could to have justice done to the estate, and was compelled to pay the debt.
 

 It may likewise be true, that an administrator may be justified by allowing a judgment to pass against him upon his own knowledge, since the creditor might compel a discovery by filing a bill against him. But that must necessarily be, when the debt is due to another person and not to a trustee for the administrator, and when the conduct of the administrator was
 
 bona fide,
 
 and not with
 
 the view
 
 of giving to the claim the form of a judgment, merely for the purpose of con-concluding or embarrassing those to whom he is to account for the estate.
 

 ■ Even in that case the judgment is, to some extent, but a formality; for the administrator might as well pay on his personal knowledge, without suit, as to let judgment go on his personal knowledge, without the oath of a witness or even oí himself. It is certainly better in such a case to leave the creditor to his bill for a discovery. But neither of those favorable views can be taken of the conduct of this defendant in procuring judgment against him.
 
 The
 
 claim appears to be not only unfounded, but without a plausible color. The defendant himself was the beneficial owner or claimant of half of it, and probably the whole. The answer states, that the defendant administered to enable him to collect the claim, and the first act of his administration was to consult
 
 *279
 
 counsel', how the claim might be asserted against him. In this he certainly was not acting for the estate, but for himself and the other pretended creditor. He brought the action and managed the case against himself, and for his own benefit, and let the verdict go upon his own statement of the facts to the jury, not on oath, which we must suppose to be like that contained in his answer; and that in it was kept back a most important fact, which was within the knowledge of both the plaintiff and himself; that is to say, that the supposed transfer of the bond to Alexander Smith had been made on condition of the death of Miss Smith of the disorder then existing, and, therefore, was no gift at all. We cannot but deem the whole proceeding collusive. Even that is not the correct expression; for the defendant seems to have been the sole actor, and might as well claim credit for a judgment in a suit brought in his own name against himself as administrator. A judgment thus suffered, is a mere empty form, and does not establish the debt. It was incumbent on the defendant to establish it, therefore, by proof in this cause. That he has attempted, by giving his own testimony in his answer, and that of the other claimant, Mrs. Smith. But neither of them states a case in which there appears any valid gift of the bond, and it turns out, on other proof, that in fact and law, there was no gift of it, and that both of these persons must have known. Whether they purposely suppressed the fact, it is not for us to say. It is enough that they knew the facts, and, that, if they had been fully laid before the counsel and the jury, no such verdiet could have been rendered, as that of which the defendant claims the benefit. In taking the accounts, therefore, the court directs that the Master shall not credit the defendant with the said sum of $1044 75, or any part thereof, or with any sum paid as costs or charges touching the same.
 

 Per Curiam, Ordered accordingly.