Mr. justice Oox
delivered the opinion of the court
This was an action rather unusual in form, but yet justified' by precedent perhaps, for the wrongful detention by the defendants of certain property belonging to the plaintiff, consisting of horses and a carriage.
The facts relied upon and claimed to have been established by the plaintiff" are that this was formerly the property of the Spanish Minister at Washington, who, on leaving this, country, sold the horses and carriage to his"Own coachman who afterwards sold it to Edward Strong, and gave him a. bill of sale dated the 6th of April, 1879, and, on the same day, Strong, for the consideration of one dollar, bargained, sold and conveyed to Catherine Tierney, the plaintiff, the same property. It seems that Strong, was then engaged to be married to the plaintiff, who was employed as cook in. *265 the family of Judge Bartley. Iu the language of the. plaintiff, who was on the witness stand, Strong told her that he had bought this property for her; he went to Judge Bartley’s and called her out on the porch and told her it was hers ; he delivered to her a bill of sale, and she gave him a dollar and told him to drive the coach and take care of it. After Strong gave the plaintiff' the bill of sale, she put it in a trunk and kept it for a long time, and on one occasion she gave it to Strong for a special purpose and never got it back until after Strong’s death. Strong gave money to the witness at various times, and after Strong’s death the carriage and horses were kept in Judge Bartley’s stable. .
On the other hand, the defendants claim that Strong retained possession of the property up to the time of his death ; that he made a will just before his death, and that if the plaintiff derived any title from him at all, she derived it from this will, and not from the alleged bill of sale or gift, made some time before ; that after the execution of this bill of sale, one Crusor obtained a judgment against him before a justice of the peace for forty dollars for feed furnished these same horses, and about six months after Strong’s death, the will meanwhile never having been established, or even offered, .for. probate in the orphan’s court, Crusor having obtained judgment against Strong, as stated, applied to the court, as creditor, for letters of administration against Strong’s estate, and on those letters took this property out of the possession of Tierney. Having obtained an order from the orphans’-court for sale, he took the property to Alexandria and it was there purchased in good faith by the defendants.
The will of Strong is also put in evidence, in which, in general terms, he gives and bequeaths to Catherine Tierney “ any and all personal property of whatsoever description that may now be in my possession, or that may hereafter come into the hands of my executor,”. &c.
The theory of the defense was, that this transaction, on Which the plaintiff relies for her title, was not a valid one, a,nd. the only title she could derive must bp under the will of *266 Strong, and taking it in that way, she must take it in subordination to the claims of creditors; and the will not having been probated, Crusor, having taken out letters of administration, being a creditor, could pass title to the defendants.
At the trial of the case, on cross-examination of the plaintiff’s witness, the defense offered to prove that Strong, while his will was being prepared and signed, stated that the property referred to in that will was the property referred to in this suit, that is, the horses and carriage. That was excluded, and this was the subject of the first exception. On offering testimony for the defense, it was attempted to be shown that Strong made a declaration at the time he made his will that he was making the will in order to give the horses and carriage to the plaintiff. That was excluded and was the subject of the second exception. So that the first and second exceptions are substantially on the same point, that is, in relation to the exclusion by the court of declarations made by Strong' at the time he was making the will, applying the terms of the will to this specific property.
It is said on behalf of the defendant that oral declarations of the testator made before and at the time of the executing of the will, are always admissible for the purpose of identifying the property as between parties claiming under the will ■ — that is different legatees, or legatees and next of kin. We have no occasion to dispute the general proposition that the declarations of the testator are ádmissible simply for the purpose of settling the identity of property claimed under the decedent. But that is not, really, the purpose for which the declarations were offered here. They were offered here really to show, in substance, a continued assertion of title to this property by Strong up to the time of his death, and indirectly to show title in him at that time, for the purpose of bringing this property under the operation of the will, and therefore in subjection to the claims of creditors. The plaintiff having offered evidence tending in the first instance to show a prior assignment to her, either in the shape of *267 gift or sale, these subsequent declarations of the deceased are offered for the purpose of impeaching his own alleged transfer. In other words, they are offered in derogation of his own act of assignment, whether by gift or sale.
We think it very clear that the ex parte declarations of a party made subsequent to an alleged assignment are not to be proved in impeachment of that assignment. Therefore the court was right in excluding this testimony. These exceptions could not be sustained.
The next exception is to an instruction of the court given at the instance of the defendant. The court said, “ if the jury believe from the evidence that the right of property in the carriage, horses and harness, mentioned in the declaration, was transferred by Edward Strong in his lifetime to the plaintiff, Kate Tierney, the personal representative could only succeed to such rights of property as Edward Strong himself had; and taking possession of the said property by the personal representative could not divest the plaintiff of her rights.” That was objected to. In other words, if the property was regularly transferred in the lifetime of Strong to the plaintiff, Strong’s representatives could not interfere with her title. No ground was stated for the objection to this instruction, and the terms in which it is couched are unobjectionable as a proposition of law. The objection now taken is, that it virtually submitted to the jury the determination of a question of law, that is whether the right or title in the property was transferred by Strong in his lifetime to the plaintiff. This supposed vagueness or defect in the instruction, the defendants’ counsel undertook to remedy himself, by asking the court to instruct the jury that the supposed state of facts did not amount to a transfer of property from Strong to the plaintiff’. But that instruction contained several distinct propositions, and it is admitted in argument now, that it is too broad, and this exception to the refusal to grant it is not insisted on. But the judge below went on to correct the supposed fault in his instructions by charging what facts would amount to a transfer of the property. He said:
*268 “ The issue has been much narrowed by the rulings of the court upon the prayers asked by the parties, so that all the jury will have to pass upon is, as to whether there was a sale of the property in controversy by Strong to the plaintiff, so as to transfer the title to the plaintiff during the lifetime of Strong. The property was purchased by Strong -with his own funds, and it is claimed that on the same day he bought it he sold it to the plaintiff’ for one dollar, and gave her the bill of sale in evidence. * * * Now it is for you to determine whether a sale of the property from Strong to the plaintiff ever actually took place ; and, if so, whether it was a bona fide sale. If you find that it did, then she was the owner of the property before Strong died ; and whether she actually took possession or not, her ownership gave her the right to possession, and she could have taken possession at any time ; and she actually took possession after Strong’s death.”
■ This proposition in the charge, taken together with the instruction, amounts simply to this, that if the jury should find a bona fide sale from Strong to the plaintiff in his lifetime, then the property was transferred, and, if they so found this transfer of the property, the personal representative of Strong, after his death, could not interfere with the title.. So that, so far as the first instruction was defective in submitting a point of law to the jury, it was corrected by this additional instruction in the charge.
But it is objected that the court should have gone further, and have said to the jury that this was not a case of sale at all, but a case of gift, and was defective as a case of gift by failure to deliver the property, inasmuch as there was no evidence of delivery in this case. The answer to that, in the first place, is, that no exception was taken to this part of the instruction, and it is too late now' to make that objection. But in the next place, we think the court would have rightfully refused to give that instruction if it had been asked. The circumstances are that Strong took this carriage to the presence of the plaintiff’ and told her it was hers, and gave her a bill of sale, and took a dollar, apparently to bind *269 the bargain, and she thereupon asked him to retain it and take care of it for her. Now, if these facts were believed by the jury, it seems to us that they amounted to delivery, constructively and symbolically, if not actually. As to creditors, it would be a question of bona fides ; but on the question of delivery to consummate a gift, it seems to us that we have here the elements of delivery if the facts are to be believed by the jury, and that the court could not be found fault with now for not having instructed the jury to the contrary. Ve think the objection to the instruction of the court in that it did not declare this to be a gift, and imperfect as wanting in the element of delivery, is not tenable, and that the court cannot be found fault with now for having omitted to give that instruction.
The only other exception relates to an expression at the close of the charge. The court said :
“ The bill of sale was not acknowledged and recorded, and the possession of the property was allowed to remain with Strong while he lived ; and if he had creditors at the time of the bill of sale, the failure to comply with the law in this respect would have rendered the sale void as to such creditors. ^ sBut it is claimed there were no creditors of Strong at this time, and if that is true, then I instruct you that the failure to acknowledge and record the bill of sale within twenty days will not render the bill of sale void. It would be valid as between the parties, and in fact as to everybody else, if there were no creditors. There is evidence that Strong owed Crusor for feed for the same horses, but that bill was contracted after the alleged time of the bill of sale to the plaintiff.”
To that portion of the instruction which states that the bill of sale would be valid as between the parties, and, in ■fact, as to everybody else, if there were no creditors, exception is taken. In the exception, are these words in parenthesis, in the language of the court, “ the possession remaining in the vendor, and the bill of sale not being acknowledged and recorded in twenty days.” In other words, the exception is, that if the property remained in possession of *270 the vendor, and the bill of sale was not recorded within twenty days, the court was wrong in saying that it would be valid as between'the parties, and, in fact, as to everybody else, if there were no creditors. If these words be taken alone from the charge, they make an unimpeachable proposition of law, because the bill of sale is good as between the; parties, and the exception is faulty in not being more specific. I think there probably was alittle mistake in the form in which it was taken as presented in the record. It is probable that the court was understood to say that if the possession remained in the vendor, and the bill of sale was not recorded within twenty days, then, under the statute, it would be valid as. agams subsequent creditors. I will assume that to be the proposition ; let us see how that affects the case. Supposing that the court ought not to have said that the bill of sale was valid as against subsequent creditors while possession was-retained and the bill of sale never put on record. Suppose that to be the error. If the proceeding under which these parties derived title had been a 'proceeding by creditors as such, then it would become a very material question whether the bill of sale was valid as against subsequent creditors or not. But, in point of fact, the proceeding was by administration, and the title is derived entirely through a supposed administration of the estate of Strong. Crusor took possession of the property qua administrator, and undertook to sell as such and pass title as administrator, so that the question is, is a bill of sale void as against creditors, void as against an administrator ? Is the latter a representative of creditors? That is a very serious question, and it requires some examination. The act of assembly of 1729, ch. 8, sec. 5, provides that “ no goods or chattels, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or any property thereof be transferred to any purchaser, mortgagee or donee, unless the same be by writing, and acknowledged, before one provincial justice, or one justice of the county where such seller, mortgagor or donor shall reside, and be within twenty days recorded in the records of the same county. Nothing; *271 in this act shall extend or be construed to extend to make void any such sale, mortgage or gift against such seller, mortgagor or donor, his executors, administrators or assigns only, or any claiming under him, her or them.”
Unquestionably the assignment could not have been disputed by Strong himself in his lifetime; but can it be assailed as void under the act of assembly of 1729 by his administrator? On this question we cannot pursue a safer-course than to be guided by the decisions of the Court of Appeals of Maryland, which have been rendered from time to time during fifty years past, in the construction of this statute ; and they have said emphatically that not only the donor but his personal representative cannot impeach a transaction of that sort, however creditors might assail it. The question immediately suggests itself what remedy has a creditor under these circumstances if the creditor cannot sue the administrator ? The court of appeals lay down two courses for the creditor to pursue. In the first place he may sue the fraudulent assignee of the deceased as executor de son ¿orí.
And they go further and say that if the personal representative is himself a creditor (which was this case) that, does not prevent him from pursuing the property by this, same proceeding in the character of creditor, but not as administrator. This very question was decided in 6 Harris k Johnson, 61. In that case a man had made a bill of sale to his own son. The executor, who was also á creditor, took possession of the property, and the son brought an action to recover it, which was sustained.
That was a case where the donee under the unrecorded assignment was not a defendant taking possession, but was a plaintiff' seeking to recover, and the court sustained his title against the executor, and said that the latter, as creditor, had no right to take possession of the property, and as executor he. was bound by the act of his testator.
It is followed by other cases unnecessary to refer to in detail.
Another remedy suggested is that a creditor may file his *272 bill against the executor and the fraudulent assignee together and have the property applied to debts. ■
So that we are constrained by the authorities to hold that Crusor, in this case, as administrator, could not interfere with this property, and could not, therefore, take possessin of it and pass title — and since the ouly title derived was from him as administrator, the court did no harm to the defendant if it erroneously asserted that the assignment was good as against subsequent creditors.
The only question remaining is in regard to the form of judgment in the case. The motion by defendants was to correct the entry of judgment by making the same in the alternative, that the defendants return the property or pay the damages assessed, which motion was overruled, and the defendants appealed to this court. We must follow precedents in this case, and the precedents show there was an error in the form of this judgment. The form in which a judgment is rendered in this kind of case is found in Harris’ Entries, p. 200, as follows :
“The jurors do say that the said D. “detains from the said P. the within writing obligatory in the declaration aforesaid mentioned, in manner and form above specified, as the said P. above against him both complained, and they do assess the damages of the said P. for the value of the said writing obligatory to £100 current money, and they do also assess the damages of the said P. by reason of detaining that writing obligatory to £10 current money, therefore it is considered by the court here that the said P. recover against the said E. the aforesaid writing obligatory, if the said P. can have the same delivered to him ; and if the said P. cannot have the same delivered, then the aforesaid sum of £100 current money, for the value of the same, and the said £10 current money, for his damages aforesaid, by the jurors aforesaid, in form aforesaid assessed, as also the sum of --- to the same P. on his assent adjudged by the court here for his costs and charges by him about his suit in this behalf laid out and expended, and the said E.,” &c.
In this case there was an absolute judgment entered for *273 so much money — six hundred dollars. That was ,a defect. There are two courses open to the court in correcting this error, viz.: One to send the case back for a new trial, which we are reluctant to do, and the other is to reform the judgment here and enter it according to precedents.
We think the damages are too large in this case, and our ■suggestion is that if the plaintiff' will remit $100, we will correct the judgment here and make it conform to the precedents ; that the plaintiff recover the specific property if it can be recovered by him, and, then, if not, recover the amount of damages. That is the conclusion we have reached in this case.