R. G. PARKER, ADMINISTRATOR, ET AL. v. MILDRED E. MOTT ET AL.

(Filed 3 June, 1921.)

1. Gifts—Inter Vivos—Causa Mortis—Possession—Delivery.

In order to a valid gift of personal property *inter vivos* there must be an actual or constructive delivery with the present intent to pass the title, applying also to gifts *causa mortis*, with the principal distinction that the latter are made in contemplation of death from a present illness or peril, and is revocable during the life of the donor and revoked by his recovery or escape or by his surviving the donee.

2. Same—Donative Intent.

Where a chose in action is represented by a bond or other written obligation, a valid gift may be made by delivery of the instrument without indorsement with the intent to presently pass the title, and when the donee is the debtor there may be a gift of the chose in action by a destruction of the instrument with the intent to give, or a written receipt of whole or a part of the debt.

3. Same—Postponement of Enjoyment.

Where a gift is otherwise complete, it will not be rendered ineffective merely because the enjoyment is postponed to a future date or until the death of the donor.

4. Same—Conditions.

Where the subject of a gift is not reasonably capable of actual delivery, such is not always required; and where the payee of a note indorses the principal sum to the maker, with the present intent of a gift, but reserves the right to the interest during her life, and retains the possession of the note, this possession so retained is evidently for the purpose of enabling her to collect the interest during her life, passing to the donee all control and ownership of the principal sum, and does not affect the validity of the gift, which becomes effective at the death of the donor when the conditions have been performed. *Semble*, a written assignment is necessary to a valid gift when the subject-matter is a mere chose in action, and not evidenced by written instrument.

**5. Gifts—Acceptance—Presumptions.**

> Where a donor, in the presence of the donee, makes a gift to the principal of his note to him, and retains the right to the interest during her life, the latter's acceptance is presumed, nothing else appearing.

APPEAL by plaintiff from *Finley, J.*, at the November Term, 1920, of FORSYTH.

The action is to recover the amount of two promissory notes, under seal, of one thousand dollars ($1,000) each, of date 17 May, 1912, payable to Rebecca Ellis, plaintiff's intestate, due two years after date, signed by defendants T. A. Mott and Mildred E. Mott, his wife, same being secured by a mortgage on real estate of the obligors situated in the town of Hickory, N. C., duly registered in Catawba County. Defendants, the obligors, and Annie E. Simpson resisted recovery, claiming that the amount due on the notes had been given by the payee in her lifetime to defendants Mildred E. Mott and Annie E. Simpson, her nieces, and there was nothing due thereon to the estate. Plaintiffs put the notes in evidence with proof that the same were found among the valuable papers of the deceased on her death at her home in Winston, N. C., where plaintiff had qualified as her administrator. Defendants offered evidence tending to show that some time before her death Rebecca Ellis, the payee, was on a visit to the home of Mr. and Mrs. Mott at Hickory, N. C., and expressed her desire and intention to give these two notes and the amounts they represented to her nieces, Mildred E. Mott and Annie Simpson, and with that view sent for a lawyer, Mr. M. H. Yount, who came to her home and undertook to draw papers so as to carry out the purpose and intent of the payee, Mr. and Mrs. Mott being also present. The testimony of the attorney as to the occurrence is as follows:

"In 1912 and 1915 I was living at Hickory, N. C., practicing law. I wrote the indorsement on the back of the notes which have been introduced in evidence and marked 'Plaintiff's Exhibits 1 and 2,' and Miss R. S. Ellis signed them.

"Q. At whose request did you make those assignments on the notes? A. At the request of Miss Ellis.

"Q. Where were you when these assignments were made? A. I was in the home of Capt. T. A. Mott in Hickory.

"Q. What did Miss Ellis say to you when you went down there to the house? A. Miss Ellis told me, after I went into the room where she was sitting, that she wanted to give $1,000 to each of her nieces. I think she said they were nieces. Mrs. T. A. Mott and Mrs. R. E. Simpson. She then produced two notes which she had, and she said, 'I want to give them at this time, each one of them, this amount as evidenced by these notes, and I want you to make such indorsements

on the notes as will show it.   She says, 'The only thing I want on the notes is the interest; I want Mr. Mott to pay me the interest on the amount during my lifetime.'

"Q. What did you say to her there about it at the time?   A. I told her why not make a will of her entire property if she was going to distribute it at that time, and she replied, 'I don't want to make a will, but I do want to give this to my nieces at this time, and my other property I wish to be distributed as the law will distribute it at my death. I don't want any litigation or trouble over my estate, and if I make a will there might be such trouble.'

"Q. Did she say anything further about when this gift was to take effect?   A. She said that she wanted to give this amount at that time, that she wanted Captain Mott to pay her the interest on the principal during her lifetime; that she did not need the principal but she could live on the interest of her investments.

"Q. Did she say anything about having other investments?   A. Yes, she said she had other property, the interest from which was sufficient to maintain her.

"Q. Who else was in the room when she was saying this?   A. T. A. Mott and his wife, Mildred Mott.

"Q. Mrs. Simpson was not there?   A. No, sir.

"Q. Was there anything said as to whether or not she would retain the notes, or what would be done with them?   A. She said there would be no trouble about it.   I don't know just what remarks she made about the other part, but she said, 'There will be no trouble about this at my death, I am sure.'

"Q. Did she say anything about the notes in connection with the interest, anything of that sort?   A. I don't recall just what she said about that.   I know she said she wanted to give them the amount of these notes, and she wanted something to show the interest on this amount, this interest was to be paid to her as long as she lived.

"Q. Did you see Miss Ellis after that time?   A. No, I don't think I ever saw her after that, not that I recall.

"Q. You simply went there in the capacity of attorney to make these assignments?   A. Yes.

"Q. Did she say anything to you when you went in about why she sent for you?   Do you recall just what she said when you went in?   A. Yes, she said she wanted to make a gift of $1,000 to each of her nieces, and then she produced two notes and she said, 'I want you to make such indorsements on these notes as will show I have given one to Mrs. Mott and one to Mrs. Simpson, and I want to retain some evidence of the fact that Mr. Mott was to pay me the interest,' and the different indorsements on the notes were made because Mrs. Simpson was not there."

Cross-examination:

"T. A. Mott and his wife are not in the courtroom now. I have not seen them here this week. Neither have I seen Mr. Simpson or his wife here this week. I think Mr. Mott came to my office to get me to go and write the transfer of these notes, and I went down to Mr. Mott's house in Hickory, and there is where the transfer was made. After I made the transfer or indorsement on the back of notes, I laid the notes on a table in the room where I was making the indorsement, and I don't know whether Miss Ellis took the notes or not; I didn't have anything to do with that. I didn't see the notes any more until after the death of Miss Ellis and this controversy came up."

There was testimony also from T. A. Mott that after Miss Ellis returned home she sent the mortgage to him marked across the face "This mortgage is satisfied," 30 June, 1915; signed by R. S. Ellis, and admitted to be her signature, with the request that the mortgage be canceled and record what had been done.

The defendant Mott further testified:

"I paid the interest on the notes sued on up to the date of Miss Ellis' death. At the time she died I owed interest from May, 1917, and payment was made after her death. The interest was paid annually. The interest became due on May 5th of each year, I think, and at the time of her death I owed interest back to the previous May 5th, and I paid that. The mortgage was sent to me some time in the latter part of July, 1915, and I kept paying interest right along up to the time of her death. I paid May 5th of the year preceding her death to the date of her death. Miss Ellis died in February, 1918, I think. After her death I paid the interest to the date of her death. She died in February, and I paid the interest up to date of her death. I paid it from May 5th up to the date of her death."

The indorsement written on the back of these notes by the attorney and signed by Miss Ellis, the payee, in the presence of these parties, are respectively as follows:

"At my death this note is to be delivered to Mrs. Mildred E. Mott, as a gift to her from me, and the mortgage securing the same to be canceled, and the same is hereby assigned to her, the interest to be paid to me during my life.

This 29 June, 1915.                                    R. S. ELLIS.

Witness: M. H. YOUNT."

"At my death this note is to be delivered to Mrs. Annie E. Simpson, as a gift to her from me, and the mortgage securing the same to remain

in force until she is paid the amount of the note by the makers, and the same is hereby assigned to her under these conditions, the interest to be paid to me during my life.

This June 29, 1915.　　　　　　　　　　　　　　　R. S. ELLIS.

"Witness: M. H. YOUNT."

The court submitted the question of a gift of these notes to the jury, ruling in effect that if the payee indorsed the notes and the written assignment appearing thereon to the defendants Mildred E. Mott and Annie E. Simpson, under the circumstances as stated by the attorney, and with the intent and purpose of passing the present ownership of the notes to these parties, that would constitute a valid gift of the notes and the principal of the same, and their verdict would be for the defendants. Verdict and judgment for defendants, and plaintiffs appealed, and admitting that the payee indorsed the notes under the assignment appearing thereon with the view of presently passing the ownership of the notes to the assignees. Assigned for error, that as a matter of law there was no such delivery of the notes as would constitute a valid gift.

*E. B. Jones for plaintiffs.*
*Manly, Hendren & Womble for defendants.*

HOKE, J., after stating the case: The authorities in this State have been very insistent upon the position that "in order to a valid gift of personal property *inter vivos* there must be an actual or constructive delivery with the present intent to pass the title." *Thomas, Exr., v. Houston et al., ante,* 91; *Askew v. Matthews,* 175 N. C., 187; *Zollicoffer v. Zollicoffer,* 168 N. C., 326; *Patterson v. Trust Co.,* 157 N. C., 13; *Gross v. Smith,* 132 N. C., 604; *Duckworth v. Orr,* 126 N. C., 674; *Wilson v. Featherston,* 122 N. C., 747; *Newman v. Bost,* 122 N. C., 524; *Medlock v. Powell,* 96 N. C., 499; *Adams v. Hayes,* 24 N. C., 361. These requisites are also essential to a valid gift *causa mortis,* the principal distinctions being that the latter is made "in contemplation of death from a present illness or some immediate peril," is revocable during the life of the donor and is revoked by his recovery or escape or by his surviving the donee. *Thomas, Exr., v. Houston, supra; Johnson v. Colley,* 101 Va., 414, reported also in 99 A. S. R., 884; *Basket v. Hassell,* 107 U. S., 602; 12 R. C. L., pp. 962-968. Where the subject-matter of an alleged gift is a chose in action, without note, bond or other written obligation, it has been very generally held that a written assignment is required in order to a valid gift. *Poff v. Poff*

(Va.), 104 S. E., pp. 719-726; *Cook v. Lum*, 55 N. J. L., 373; *Adams v. Stone Co.* (Cal.), 178 Pac., 498; 14 A. & E., p. 1022. Though in a recent case of *Dinslage v. Stratman*, 180 N. W., p. 81, the Supreme Court of Nebraska, in a learned opinion, maintains the position that a valid gift of an open account may be made by parol where the donor, with intent to make a present gift, directs the debtor to pay the debt to the donee, the Court applying to it the recognized principle that a gift so made will be upheld when a delivery with the donative intent is made in the only way of which the "chose" is susceptible. Where a chose in action is represented by a bond or other written obligation it is usually held that a valid gift may be made by delivery of the instrument without indorsement, the same being with intent to presently pass the title, and in case the alleged donee is the debtor there may be a gift of the chose in action, termed also a forgiveness of the debt, by a destruction of the instrument with the intent to give or a written receipt delivered of a whole or a part of the debt, etc. *Carpenter v. Soule,* 88 N. Y., 251; *Ebel v. Piehl,* 134 Mich., 64; *Waite v. Grubbe,* 43 Oregon, 406. And in such case, where the gift is otherwise complete, made with the intent to presently pass the note, authority is to the effect that it will not be rendered ineffective because the enjoyment is postponed till a future date or until the death of the donor. Thus, in the *Dinslage case* (Neb.), *supra,* it is said: "The mere fact that actual enjoyment of the gift by the donee is, by the declaration of the gift, postponed until the death of the donor, does not render the gift either conditional or testamentary, or in any way invalid," citing many authorities, and the opinion quotes from *Tucker v. Tucker,* 138 Iowa, 344, to the effect that "If the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material, and will not defeat it." In the case cited from New Jersey Reports *supra* of *Cook v. Lum, Chief Justice Beasley,* recognizing the great variety of circumstances calling for the application of the law of gifts, choses in action and other, states in effect the general principle in a very helpful way as follows: "But this is a maze not without its clue, for the cardinal principle as to what constituted a delivery that will legalize a gift is on all sides admitted to be, and the test is that the transfer is such that, in conjunction with the donative intent it completely strips the donor of his dominion of the thing given, whether that thing is tangible or a chose in action." Applying the principle so stated to the facts presented, we are of opinion that this is a valid gift which presently passed the title to the principal of these notes to the donees retaining the right to interest thereon till the death of the donor and retaining possession of the notes for the purpose of collecting the interest and not otherwise. There is here no question of the donative intent, and the

same is admitted, and to carry out this purpose an attorney was procured, a written assignment entered on the notes in the presence of the donees, or two of them, signed by the holder. The entry being, "This note is hereby assigned, the interest to be paid me during my life and at my death the note is to be delivered." Both the writing and the testimony pertinent to the same evince and express the clear purpose of presently passing title to the principal retaining possession of the notes, as stated, for the purpose of collecting the interest till the donor's death. To emphasize this view of the matter, the mortgage securing the notes is also delivered up marked "paid," and the same is formally canceled of record, thereafter the donor no longer had any control over the principal of these notes, and this must be held a complete and perfect gift of such principal. The right by contract to sever the principal from the interest of notes or other choses in action, according to the intent and agreement of the parties, has been directly approved in this State, and is very generally recognized. *King v. Phillips,* 95 N. C., 245; 22 Cyc., p. 1572. And the force and effect of this transaction is to presently give the principal retaining the interest and the right to collect same till the donor's death. A case very similar is presented in *Green v. Langdon et al.,* 28 Michigan, 221, where the holder of a note and mortgage, desiring to give one of his children and her husband a part of the debt, indorsed thereon a gift of the said portion with the intent and purpose of forgiving or donating so much of the mortgage debt and to extinguish the same to that extent, retaining the notes: *Held* to be a perfect gift on the ground that it was all the delivery of which the subject was susceptible, consistent with the intent and purpose of the transaction. In that case *Judge Christancy,* delivering the opinion, said: "As the debt, which was the subject of the gift, when considered with reference to the fact that the donee was the debtor, and that only part of the debt was attempted to be given, did not admit of actual delivery, and as all was done that could well be done, under the circumstances, to render the gift effectual, we do not think the act and intention of the donor should be defeated merely because the subject did not admit of actual or technical delivery." And that case also holds that the transaction having taken place in the presence of one of the donees, an acceptance by the other may be presumed. In *Basket v. Hassell,* 107 U. S., 602, and also in *Harris Banking Co. v. Miller,* 190 Mo., 640, the alleged gifts were held invalid as such, but on the ground that from the facts in evidence, the donor retaining possession of the instrument was given control of the debt till his death, though in the last case the alleged donee was awarded the property by way of a valid and enforceable trust. And in a case in our own Court, *Smith, Admr., v. Downey,* 38 N. C., 268, where a deceased obligee had indorsed on a $900

note that "one B. was to have $600 of the note," retaining possession, this on the record was claimed as a gift *donatio causa mortis,* and the same was disallowed for two sufficient reasons, that being an alleged gift *causa mortis,* the donor had recovered; and further, because the facts in evidence showed that the alleged donor was to have control of the note, and the debt that it represented, till her death. But in the present case, as stated, the transaction was an assignment of the principal with the present intent to pass same, retaining possession only for the right and purpose of collecting the interest. On the facts in evidence, by correct interpretation, the transaction had the effect of passing to defendants all control and ownership of the principal; no collection of same could thereafter have been made by the donor, possession being retained by her for the purpose only of collecting the interest, this being in accord with the act and intent of the parties.

We find no reason for disturbing the result of the trial, and the judgment for defendants is

Affirmed.