## SMITH v. ACORN.

### No. 29.

Municipal Court of Appeals for the District of Columbia.

Jan. 29, 1943.

Rehearing Denied Feb. 12, 1943.

---

James A. Crooks, of Washington, D. C., for appellant.

Robert E. Acorn, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

A suit in replevin was brought by appellee as executor of Harry H. Nichols, deceased, to recover an automobile which was in the possession of appellant. The latter claimed to be the rightful owner in lawful possession; that it was a gift to her by the deceased. The court found for the executor and entered judgment against appellant for possession of the automobile or its ascertained value of $445.00.

Deceased had purchased the automobile from the Takoma Motor Company on April 15, 1939. It was thereupon titled and registered with the District of Columbia Department of Vehicles and Traffic. On April 18, 1939 a document entitled "Certificate of Title of a Motor Vehicle" was issued to deceased by the Director of Vehicles and Traffic wherein the automobile was described, certified to have been duly registered, and the deceased, Harry H. Nichols, named as the lawful owner.

Deceased and appellant had been acquainted for nearly 25 years, were employed in the same Government office, and for several years had driven to and from work together. She resided at 2001 16th Street N. W., an apartment building without garage facilities. The decedent, a widower, occupied premises 7400 12th Street N. W., which included a private garage.

On May 1st, 1939, deceased went with appellant to the office of Takoma Motor Company at Takoma Park, Maryland. Derrick, a salesman employed by that company who had known deceased for many years and had sold him several automobiles including the car in question, testified to the matters which then transpired. Deceased, he stated, signed the assignment on the back of the certificate of title to the car, and witness, after deceased had signed, executed the oath as a notary public, and at deceased's direction then handed the certificate to Miss Smith who put it in her purse. Deceased said to him—"If anything happens to me I want Miss Smith to have the automobile".

In evidence in the case is the certificate of title, on the back of which is the assignment described by the witness Derrick. It is entitled "Assignment of Title" and the substantial part is as follows: "For value received the undersigned hereby sells, assigns or transfers unto Nellie Smith, Address 2001 16th St., N. W., Wash., D. C.,

the motor vehicle described on the reverse side of this certificate."

The signature thereto of Harry H. Nichols, the deceased, is followed by a form of acknowledgment dated May 1st, 1939, executed by the witness Derrick under his seal as a notary public of the State of Maryland.

Deceased also gave appellant a set of keys for the car. She retained both certificate of title and keys and they were in her possession when Nichols died on October 3, 1941. At the executor's request she gave him the certificate to forward to decedent's son in Detroit for his examination, after which it was returned to her.

When not in use, the automobile was kept in decedent's garage. Appellant testified that this was because she did not have a garage; that they used the car together and it was a convenience for both of them for deceased to come for her and to leave her at her home and use the car to drive to his home; that the car was given to her at the time title was transferred.

At the time of decedent's death and of the funeral on October 6, 1941, the car remained in decedent's garage. It was removed by appellant about a week later.

The certificate of title and assignment were not presented to the Department of Vehicles and Traffic for the issuance of a new certificate to the appellant until November 15, 1941. During the period between May 1, 1939 and October 1941 the tags issued in April 1939 to deceased, and renewal tags applied for by deceased as owner, were used on the car. Deceased continued his membership in the American Automobile Association, the car remained registered in the name of deceased, and he carried automobile liability insurance thereon.

A witness, Helen Fernald, called by appellant, testified that she worked in the same office with deceased and appellant and had known both for about 20 years; that during the last 10 days of Mr. Nichols' life she visited him at the Washington Sanitarium. On one occasion when she and Miss Smith visited him there, deceased seemed concerned about an automobile which he referred to as "Miss Smith's car"; that he said to appellant in witness' presence "Nell, the car is yours", and that on another occasion when they visited him at the Sanitarium he asked appellant if she had taken the car from the garage.

Upon this statement of facts the trial court held that the gift was incomplete for want of a sufficient delivery of the car to the appellant.

This statement of facts presents two questions bearing upon the validity of the gift.

First, was there a completed gift resulting from the transaction in April 1939 when the deceased executed and delivered to the donee the certificate of title to the automobile in question and stated to the notary who executed his assignment endorsed thereon that "If anything happens to me I want Miss Smith to have the automobile"?

Second, did the continued custody of the automobile by the deceased and subsequent acts usually referable to ownership impugn the character of the written instrument as a gift in praesenti?

■ In approaching this subject we are mindful that gifts either inter vivos or causa mortis are not looked upon with disfavor, but when they partake of testamentary character, as do those made to take effect in enjoyment at the death of the donor, clear and convincing evidence is required to support them and such evidence is scrutinized with extreme care by the courts. In this case all essential facts introduced by both parties are undisputed and the question is one of law arising upon those facts. In such a case the obvious intent of the donor should be effectuated, if to do this requires no violation of the recognized rules of law.

The objection made by the executor and considered by the trial court was the lack of physical delivery of the subject of the gift.

■ The authorities appropriate to the present case are those in which it appears that a written instrument has been delivered to the donee, purporting to transfer title. We feel that the weight of authority in this jurisdiction and elsewhere is that in such cases the delivery of a bill of sale or written evidence of title, with a donative intent, is a sufficient delivery of the property, although it may be the intent of the parties that the property itself is to be retained in the possession of or enjoyed by the donor during his life.

In Tierney v. Corbett, 2 Mackey 264, 13 D.C. 264, the deceased drove his coach and two horses to the place where donee worked, told her it was hers, and gave her

a bill of sale reciting the nominal consideration of $1.00. The bill of sale was never acknowledged or recorded. He then drove the outfit away and used it until his death. He was a coachman, and she was the cook in a private family. After his death the administrator at the instance of creditors sold the property, whereupon suit was filed by the donee against the purchaser. The gift was sustained. The court said:

"The circumstances are that Strong took this carriage to the presence of the plaintiff and told her it was hers, and gave her a bill of sale, and took a dollar, apparently to bind the bargain, and she thereupon asked him to retain it and take care of it for her. Now, if these facts were believed by the jury, it seems to us that they amounted to delivery, constructively and symbolically, if not actually."

In Jones v. Deyer, 16 Ala. 221 it is said: "When a gift of personal property is made by deed, the delivery of the deed is sufficient though the donor does not part with the possession of the property."

An early South Carolina case, Jaggers v. Estes, 2 Strob Eq., S.C., 343, 49 Am.Dec. 674, is directly in point. The court there said: "But it is objected that where the donor reserves a life estate in himself, * * * there can be no delivery of the possession, which, it is urged, is indispensably necessary to pass title to personal property. * * * But I apprehend that I am well supported by authority in saying that where there is a deed or writing conveying the title, no delivery of possession of the chattel is necessary to the perfection of the title. In such cases the delivery of the deed or writing passes the title, and is a substitute for the delivery of the property."

We think this correctly states the rule of law applicable here.[1]

That deceased retained physical possession of the automobile after the title was transferred does not nullify the transaction as a completed gift.

In Parker v. Mott, 181 N.C. 435, 107 S. E. 500, 25 A.L.R. 637, an assignment of notes expressly provided that the interest thereon should be paid to the donor during his life and he retained possession for the purpose of making collections.

Numerous authorities were cited in that

opinion including Tucker v. Tucker, 138 Iowa 344, 116 N.W. 119, in which the court said: "If the gift inter vivos is absolute, the mere postponement of the enjoyment until the death of the donor is not material, and will not defeat it."

To the same effect is Howard v. Hobbs, 125 Md. 636, 94 A. 318.

This rule applicable to gifts presently made but where enjoyment is postponed until the death of the donor was recognized in this jurisdiction in Conlon v. Turley, 56 App.D.C. 95, 10 F.2d 890. The donor deposited certain bonds and requested the cashier to make out a receipt in his daughter's name stating: "The reason for this is, if anything happens to me, I want my daughter to have these bonds."

Later at his own office donor obtained the receipt from his safe, handed it to donee, who returned it requesting that he keep it in the safe where it was found after the donor's death. The donee made no contact with the bank; donor had the interest coupons detached and credited to his personal account. In upholding the gift the court said:

"The statement of the donor to the cashier, at the time of the deposit, that his reason for making it was that, if anything happened to him, he wanted 'his daughter' to have the bonds, is not inconsistent with the theory of a gift in præsenti, and in view of all the circumstances it should not be given the effect of overcoming the plain force and effect of the written receipt given at the time of the transaction. The same statement applies, also, to the collection of the semi-annual interest upon the bonds by the donor; for, if the gift was already complete, no subsequent action of the donor alone could rescind it, and, moreover, the interest may have been collected for the benefit of the donee."

Applying these principles in the present case we think that the transfer of title by the execution, acknowledgment and delivery of the assignment of the certificate of title to the automobile invested in the donee a complete title as of that time. This document is one required by law to evidence ownership of an automobile in the state of Maryland where the transaction occurred and in the District of Columbia where both parties resided. The assignment on the back of that instrument is a

---

[1] The cases on this subject are collected in the annotation to Sylvain v. Page, 84 Mont. 424, 276 P. 16, 63 A.L. R. 528, at pages 558-560.

256

means provided by law for the transfer of ownership; no lien could be created thereon by the donor or sale or other transfer made by him without the production of this title certificate or accounting under oath for its loss. Upon its presentation to the Director of Vehicles and Traffic of the District Government a new title certificate would be issued to the donee. We attribute the subsequent acts of the donor in carrying insurance and securing tags as referable to his continued use of the vehicle and not as indicating a purpose on his part to recall either the gift or the title. This is further evidenced by his statement in the presence of a witness when he was a patient in the Washington Sanitarium, a few days prior to his death: "Nell, the car is yours".

Had there been doubt that the gift was complete in April 1939 when the title was transferred, this statement shortly before his impending death would be material for consideration. Sorrells v. Collins, 110 Ga. 518, 36 S.E. 74, 75. In that case a gift which the court held would not be sufficient as a gift inter vivos was held validated by a similar statement which the court said was "clearly equivalent to a new delivery".

The judgment is therefore reversed and the case remanded for further proceedings.

Reversed.