G. W. TAYLOR, Administrator, vs. ADDIE O. SMITH.

*Contract—Agreement between Joint Owners of Note—Survivorship—Gift—Conflicting Findings of Jury—" Living Heir."*

1. In a contract between two owners of a note providing that, should either of them die before the other without "a living heir," the survivor should become sole owner of the note, the words "living heir" should be construed to mean "issue."

2. A verbal agreement between two parties owning a note, payable to them jointly, that upon the death of either without issue it shall belong to the survivor is valid.

3. The Statute, Sec. 1326 of *The Code,* abolishing survivorship in estates held in joint tenancy, does not prohibit contracts making the rights of the parties dependent on survivorship.

4. Where in response to one issue a jury found that a contract existed between two sisters, whereby the survivor should have the whole of a certain note belonging to them jointly, a finding in response to another issue that one of its parties at a later date made a gift of her share in such note, is not inconsistent with the first finding.

CIVIL ACTION, tried at February Term, 1894, of the Superior Court of GREENE County, before *Brown, Judge.* The material portions of the testimony were as follows:

George M. Smith testified for the defendants: " I executed the note for seven hundred dollars." Said witness further testified: " I paid this note to Addie O. Smith, December 24, 1891; paid fifty-six dollars in cash, and gave her a deed for a tract of land worth seven hundred dollars. She surrendered me the note. After the note was assigned to Cora and Addie Smith I paid one-half the annual interest to each. After Cora died, which was on June 12, 1891, I paid the whole note and interest to said Addie, as before stated. She had possession of note and surrendered it to me. I know Cora owned one-half of the note during her

life.   Cora Smith married the plaintiff about eighteen months before she died.   I paid Cora her part of the interest before she was married.   I do not think I paid her any interest after she was married.   I then paid the interest to Addie Smith."

Deposition of Talitha Smith is offered in evidence, which is as follows:

Question 1.  What is your age, name and residence?

Answer.  My name is Talitha Smith, am sixty-seven years old, and live in Falkland township, Pitt county, N. C.

Question 2.  Is your health too feeble for you to attend Court?

Answer. It is.   I have not been able to go out of room for five or six months; I have rheumatism.

Question 3.  How are you related to Cora L. Taylor, deceased, and Addie O. Smith and George M. Smith?

Answer.  They are all my children.

Question 4.  Do you know anything about what note your daughter, Cora Taylor, owned before her death, and how she disposed of the same?   If so, state all you know about it.

Answer.  She had a note against George M. Smith for three hundred and fifty dollars, if I remember correctly.  I think her part was three hundred and fifty dollars.  A short while before she was married, say about twelve months before her marriage, she handed this note to her sister Addie and told her to put it away and take care of it.   At same time and place they agreed with each other that should either of them die before the other without a living heir, that the survivor should have the note, and that during the life of both of them they should collect the interest together in equal shares.   At the time she handed note to Addie she

TAYLOR *v.* SMITH.

said, keep it until I call on you for it, if I ever do, and if I never do, you keep it.

This note was given to Cora and Addie jointly by the administrators of Bryant Smith, deceased, whose name is W. S. E. Smith, my son. They were both present when he' handed them the note. I meant Cora L. and Addie O. Smith were both present. This note was given them in settlement of their father's, Bryant Smith's, estate.

Q. 5. Do you know the whole amount of the note in controversy ?

A. Yes, it was seven hundred dollars.

Q. 6. Did you ever hear Mrs. Taylor speak of this transaction at any other time ?

A. I have. A short while before her death she told me she wanted Addie to keep and have the note, and that she had told George she wanted Addie to have it. No one was present except Cora and myself at that time. (All the answer to the last question objected to as incompetent, because irrelevant, and because the husband of said Cora L. Smith was not consenting to the alleged transfer or alleged statement deposed to in that answer.)

The following were the issues and responses:

1. Did the said Cora Taylor, about twelve months before her marriage to plaintiff, deliver said note, described in the pleadings, to Addie O. Smith upon a mutual agreement between herself and said Addie that the surviver should take the whole of said note, as alleged by defendants? Yes.

2. Did Cora Taylor, prior to her marriage about twelve months, make a gift of her interest in the note described in pleadings to said Addie O. Smith, as alleged by defendants ? Yes.

3. If so, did said transaction take place prior to the engagement of marriage between George W. Taylor and said Cora? Yes.

*Mr. J. B. Batchelor*, for plaintiff.
*Mr. Geo. M. Lindsay*, for defendant.

AVERY, J.: Two sisters, the plaintiff's intestate and the defendant, "agreed with each other that should either of them die before the other without a living heir, the survivor should have" a note in which both were payees and each had an equal undivided interest, "and that during the life of both of them, they should collect the interest together in equal shares." About twelve months afterwards one of the sisters married and subsequently died leaving the defendant, her unmarried sister, surviving her, but no issue. In the connection in which they appear, the words "living heir" were manifestly intended to mean issue and we will so interpret them in construing the agreement. *Howell* v. *Knight*, 100 N. C., 254; *Patrick* v. *Morehead*, 85 N. C., 62. To say that one sister died "without a living heir" and at the same time leaving a surviving sister, would be palpably absurd, unless we construe "heir" to mean "issue."

The first question suggested upon the argument was whether the agreement was a contract upon mutual considerations, or a *nudum pactum*. Counsel contended that it could not be enforced because it was a gambling agreement and therefore void, as in contravention of public policy. It is settled law in North Carolina that a *bona fide* assignment of a contingent interest in land for a valuable consideration will be enforced as an equity. *Bodenhamer* v. *Welch*, 89 N. C., 78; *McDonald* v. *McDonald*, 5 Jones Eq., 211; *Watson* v. *Smith*, 110 N. C., 6; *Foster* v. *Hackett*, 112 N. C., 546. If the equitable right to such contingent interest can be assigned for money or anything of value, it follows of course that the equitable right to two such interests could be lawfully exchanged, the one in consideration of the other, like all other assign-

able interests in land.  Upon the same principle, one of two joint owners of a fund may sell *bona fide* for a valuable consideration the contingent equitable right to the whole fund, where it is so limited as to depend upon survivorship. When the two sisters agreed with each other to hold the note, in which each had an individual moiety as joint tenants subject to the right of survivorship, these mutual rights of survivorship, when once created, were assignable equities, constituting mutual considerations sufficient to support the agreement.  The Act of 1784 (*Code* Sec. 1326) abolishes survivorship, where the joint tenancy would otherwise have been created by the law, but does not oper- ate to prohibit persons from entering into written contracts as to land, or verbal agreements as to personalty, such as to make the future rights of the parties depend upon the fact of survivorship.  It would seem needless to cite authority in support of the proposition that mutual pro- spective benefits are sufficient to support mutual stipula- tions between parties.  The right to the fund in case of survivorship was a valuable assignable interest, and the two sisters therefore entered into a valid contract, which secured to each the benefit, like that provided often by an insurance policy, of the ownership of the whole fund in case she should survive the other.  The jury have found that such was the contract entered into by the defendant and her deceased sister, the plaintiff's intestate and former wife.

The mother of the two sisters, Mrs. Smith, deposed fur- ther that at the time of making the contract the plaintiff's intestate handed the note to the defendant, saying "Keep it until I call on you for it, if I ever do, and if I never do, you keep it."  Upon her testimony, together with that of another witness (who was obligor in the note) to the effect that he paid the whole of the interest to the defendant after

her sister's marriage and eventually all of the principal, the Court submitted two other issues, in response to which the jury found that plaintiff's intestate, about twelve months before her marriage with the plaintiff and prior to her engagement of marriage with him, made a gift of her interest in the note to her sister. It is insisted for the plaintiff that the finding that a gift was subsequently made, is inconsistent with the contract as to the right of each in case of survival. We do not think so. Plaintiff's intestate might, after making the contracts, have made the gift, but if she did not subsequently give her interest in the note to her sister, the contract of course remained in full force. So that if it be conceded, as was contended by plaintiff's counsel, that the testimony was insufficient in its most favorable aspect to show a valid gift, the only result would be to leave the contract in full force. Nothing but a subsequent valid gift by the intestate of her interest to the defendant would have altered or impaired the validity of the contract, and either the contract or such gift would warrant the rendition of the judgment. If the Court erred in telling the jury that the testimony of Mrs. Zeletha Smith, if believed by them, was sufficient to justify them in responding to the second issue in the affirmative, it was not erroneous to tell them that hers was the only evidence relied on by the defendant, and, if believed, was sufficient to show the mutual agreement. As the jury found separately on the specific issues and they are in no wise dependent on each other, we think that any error in defining indirect terms, or inferentially what constituted in law a gift, was harmless. The evidence of the mutual agreement, which was entered into before the alleged gift, was to be considered distinct from that relating to the gift, and the finding upon it, having established the contract will support the judgment of the Court even if the other

findings should be set aside for error. The specific reference to the testimony of Zeletha Smith as the only evidence upon which the defendant did or could contend for a verdict in her favor, bears no analogy to the cases where the Judges have erred in selecting, among several witnesses to the same transaction, one whose testimony was more unfavorable to a party than that of the others, and making the response to an issue or issues dependent upon the credibility of such witness.

For the reasons given we think that the judgment below should be affirmed.

Affirmed.