TRENTON SAVING FUND SOCIETY, complainant,

*v.*

MARGARET BYRNES et al., defendants.

[Decided May 31st, 1932.]

*Messrs. Minton & Rogers,* for the complainant.

*Mr. Martin P. Devlin,* for the defendant Byrnes.

*Mr. B. Braddock Dinsmore, Jr.,* for the defendant executor.

BUCHANAN, V. C.

On September 14th, 1929, Sarah Cranney having on deposit with complainant the sum of $4,964.87, to her credit in her own individual name, withdrew that sum and redeposited it in an account to the credit of herself or Margaret Byrnes. The latter was a niece of Sarah Cranney, and accompanied her on this occasion.

A signature card was signed by both of them, which bears the following words:

"This account and all money to be credited to it belong to us as joint tenants, and will be the absolute property of the survivor of us; either and the survivor to draw. We do each appoint the other attorney irrevocable with power to deposit in said joint account moneys of the other, and for that purpose to endorse any check, draft, note, or other instrument payable to the order of the other."

And a pass-book was accordingly issued by the bank, in both names.

Miss Cranney died April 13th, 1930, leaving a will executed two days before, of which the defendant Trenton Trust Company is executor. Both defendants claimed the fund on deposit with complainant and demanded payment; whereupon complainant filed its bill of interpleader.

Defendant Byrnes disputed complainant's right to interplead, citing decisions of this state which hold that a bank, being a bailee for its depositor, is not entitled to require its bailor (depositor) to interplead with a third person, claiming the subject-matter of the bailment by title paramount to that of the bailor; and that a bailee has no right to interpleader when there is no privity of contract between the bailee and the two conflicting claimants.

It is sufficient to point out that in the instant case the defendant executor is not claiming by title paramount to that of the bailor; that there is privity of contract between the two claimants and the complainant. The defendant executor stands in the shoes of its testatrix; the conflicting claims are made on behalf of the two parties with whom the bank made its contract. One claim is made by the party herself; the other is made by the executor of the other party, by title derived from her.

The right to decree of interpleader is clear. Interpleader was decreed, under similar circumstances, in *East Rutherford Building and Loan Association* v. *McKenzie, 87 N. J. Eq. 375; Morristown Trust Co.* v. *Capstick, 90 N. J. Eq. 22; affirmed, 91 N. J. Eq. 152; Commonwealth Trust Co.* v. *Grobel, 93 N. J. Eq. 78.*

As between the two defendants the issue is whether or not the testatrix, by the transaction in question, intended to accomplish, and did accomplish, a then presently effective gift to the defendant Byrnes, of such an interest in the account (whether of joint tenancy or otherwise) as entitled her to the ownership thereof on the death of the testatrix.

There is no question but that the transfer of beneficial ownership, if such was intended, was by way of gift. The deposit was made by testatrix with her own money. Admittedly not a penny was ever deposited in the account by anyone but the testatrix, and no claim nor intimation is made as to any consideration of any other kind by or on behalf of Mrs. Byrnes. The only contention made is that the gift was made out of friendship and affection and in recognition and appreciation of past kindnesses.

The elements necessary to constitute a completed gift *inter vivos* are three: intent, delivery and acceptance. *Reiley* v. *Fulper, 93 N. J. Eq. 112* (at *p. 115*).

In some cases (such as in *East Rutherford Building and Loan Association* v. *McKenzie, supra,* and *Besson* v. *Stevens, 94 N. J. Eq. 549*), dispute arises as to the validity or effectiveness of the acts relied on to constitute delivery. Not so in the instant case: the transaction mentioned was legally effective to operate as a transfer of beneficial interest *in præsenti,* if the intent of the testatrix was that it should so operate: it was sufficient to constitute a valid delivery. *New Jersey Title Guarantee and Trust Co.* v. *Archibald, 91 N. J. Eq. 82* (at *p. 85*). See, also, *Kaufman* v. *Edwards, 92 N. J. Eq. 554* (at *pp. 558, 559*).

Under the authority of the *Archibald Case, supra,* the evidence of the transaction mentioned—the signing of the card by both persons, and the language on the card so signed (all

of which are identical with the facts in the instant case)—constitutes sufficient evidence, *prima facie,* of the requisite donative intent.

Counsel for the defendant Mrs. Byrnes, indeed, contends that the determination in the *Archibald Case* goes further and holds that such evidence is *conclusive* as to the existence of donative intent: that under the opinion in that case it must needs be held in the instant case that the deposit belongs to Mrs. Byrnes.

With that contention, however, this court cannot agree. It is true that the appellate court, in the course of that opinion, says:

"We think that where, as here, moneys belonging originally either wholly to the mother, or in part to her and in part to her daughter, are deposited by them in a bank in their joint names, and at the same time they both sign and deliver to the bank a writing stating that 'this account and all money to be credited to it belongs to us as joint tenants and will be the absolute property of the survivor of us; either and the survivor to draw,' upon the death of the mother the undrawn moneys belong to the surviving daughter."

It seems apparent from a reading of the entire opinion that there was no issue between the parties in that case on the subject of intent; and it is probable that that is the reason why the court said nothing on that point, in the paragraph just quoted. But the court later on discusses the question as to whether there had been a valid delivery, and also mentions the subject of intent, saying:

"The contract entered into by the bank with the mother and her daughter exhibited a donative purpose from donor to donee [not one merely for use and convenience of the donor] and hence constituted a valid gift. See *East Rutherford Building and Loan Association* v. *McKenzie, supra; Schippers* v. *Kemphes, supra; Dunn* v. *Houghton, 51 Atl. Rep. 71.*"

It cannot be deemed therefore that the court intended to determine that wherever a contract is made by two persons with a bank, similar to that in the instant case, donative intent is conclusively presumed and evidence as to lack of dona-

-tive intent is immaterial; it cannot be deemed that it intended to go any further than to determine that under such cir- -cumstances there was *prima facie* evidence of donative intent and there being no evidence to disprove such intent and no controversy over the existence of donative intent, the transac- -tion was valid as a completed gift. This is particularly evi- dent when it is considered that *Schippers* v. *Kemphes, supra,* which it cites with approval in the paragraph quoted, was a -case in which it was held that although the transaction there at issue was sufficient to be effective as a delivery, there was no donative intent and hence no valid gift; and Vice- -Chancellor Stevenson says in the course of the opinion:

"But no external form of a gift, no delivery, if the subject- -matter of the gift be a chattel, no contract on the part of the third party, if the alleged gift be like the one which we are now considering, has any sufficiency if the donative pur- pose be lacking."

And the case was unanimously affirmed on the opinion below. *72 N. J. Eq. 948.*

So, also, in *Commercial Trust Co.* v. *White, 99 N. J. Eq. 119* (unanimously affirmed on the opinion below, *100 N. J. Eq. 561*), Vice-Chancellor Fielder, in considering conflicting claims to the ownership of several bank accounts in form substantially like the one here *sub judice,* says (at *p. 126*): "It is settled law in this state that under such forms the balance to the credit of the accounts belonged to Mrs. White [the 'donee'] on the death of Bullis [the 'donor'], *unless it appears * * * that he had no donative intent,"* &c.

Turning then to a consideration of the proofs in the in- -stant case on the subject of intent: the evidence is over- whelmingly to the effect that the testatrix, in the opening of this account, did not have any intent of making a gift *in præsenti* to Mrs. Byrnes. Indeed, the testimony of Mrs. Byrnes, herself, is conclusive on this point.

The great weight of the evidence is that Miss Cranney's intent was simply that Mrs. Byrnes might be able to withdraw moneys from the account, for the convenience, and as the agent, of Miss Cranney. Such is the testimony of the five

witnesses produced by the executor—including a brother and two sisters of Mrs. Byrnes, and including also Mrs. Green, by whom Miss Cranney had been employed for so many years and who not only has no interest in the outcome of the case, but is of the highest standing and credibility. Mrs. Byrnes herself is the only witness whose testimony is in conflict. There is added corroboration, if necessary, in the fact that the deposit was solely of Miss Cranney's money and constituted about two-thirds of her total assets; Miss Cranney kept the pass-book in her own trunk—Mrs. Byrnes neither deposited in the account nor withdrew from the account except on two occasions. On one of those occasions she withdrew $200 for, and at the request of, Miss Cranney, who was house-bound. On the other occasion she withdrew $3,000 when Miss Cranney was at the point of death, for the purpose (as she herself says) partly to avoid the payment of inheritance tax and partly to prevent another niece of decedent from getting it. She immediately redeposited $2,500 of it back in the same account, at the direction of her husband.

From the testimony of Mrs. Byrnes, herself (including her self-contradictions), and that of her husband, it is quite obvious that Mrs. Byrnes had in nowise understood that her aunt had intended to make a gift to her—that she had never had any notion that she had any beneficial interest of her own in this bank account, until they read the wording in the pass-book and were advised by some outside party, at the time of Miss Cranney's death.

Finally there are the two admissions made by Mrs. Byrnes in her testimony—one, that in a conversation with several of the other nieces and nephews, shortly after Miss Cranney's death, she refused to "turn over the pass-book" but told them "they would get their share out of the amount represented by the pass-book after I got mine," indicating clearly that she had no claim to personal ownership of the account; and the other, that her belief was, at the time her aunt opened the new account, that her aunt's intention was to give her whatever might be left at her death. The conclusion is inescapable that there was do donative intent *in præsenti;* and hence

there could be no valid gift. *Morristown Trust Co.* v. *Capstick, supra.*

It is concluded that the testatrix had no donative intent in the opening of the account in question, and that her executor is therefore entitled to the fund.