MATTIE BYNUM v. THE FIDELITY BANK OF DURHAM. N. C., AND LEON W. POWELL, ADMINISTRATOR OF THE ESTATE OF JOANNA LEATHERS, DECEASED.

(Filed 18 March, 1942.)

**1. Appeal and Error § 39—**

A new trial will be granted only for prejudicial or harmful error.

**2. Gifts § 4— .**

The essentials of a gift *causa mortis* are a gift made in expectancy of death to take effect only upon the death of the donor from the existing disorder, and delivery of the gift by the donor.

**3. Same—Evidence held sufficient to be submitted to jury on question of donor's delivery of gift.**

The evidence in this case tended to show that intestate called plaintiff to her bedside, directed plaintiff to get her pocketbook, which contained certain keys, and a tin box, that intestate put the keys in plaintiff's hands and told her not to let anyone else have them, that intestate, with the box resting on her lap, named the contents of the box and told plaintiff "everything in this box is yours and this key unlocks this box," instructed plaintiff "take the box and put it up" or "put it back in the closet," and told several witnesses that she had given plaintiff everything. *Held:* The evidence is sufficient to be submitted to the jury on the question of intestate's delivery of a savings account evidenced by a bank book contained in the tin box.

APPEAL by defendant Leon W. Powell, Administrator of the Estate of Joanna Leathers, deceased, from *Erwin, Special Judge,* at July-August Term, 1941, of DURHAM.

This case was before this Court on the question of proper pleadings at the Fall Term, 1940. *Bynum v. Bank,* reported in 219 N. C., 109, 12 S. E. (2d), 898.

Joanna Leathers, a widow, 70-odd years of age, died intestate in Durham County on 15 September, 1939. She had no lineal descendants.

She left surviving her certain collateral kin. Mattie Bynum, the plaintiff, wife of Will Bynum, is 43 years of age and was born to Zilphia Sears, a niece of Frank Leathers, in the home of Frank and Joanna Leathers. Two weeks after plaintiff's birth Zilphia Sears left her child with Frank and Joanna Leathers, who reared her. Plaintiff's name was changed to Mattie Leathers and she was grown before she knew that she was not the child of Frank and Joanna Leathers. She was supported and educated by them and treated by them as their child until her marriage in 1916. After plaintiff's marriage she and her husband went North to live. At the request of Frank Leathers she and her husband returned to Durham in 1931 and lived in the home of Frank and Joanna Leathers until the death of both of them. Frank Leathers died in February, 1932 and in his will he made certain provisions for the plaintiff and referred to her as his adopted daughter. The plaintiff, however, was never legally adopted by Frank and Joanna Leathers.

Prior to the death of Joanna Leathers she had a savings account in the Fidelity Bank of Durham, N. C., in the amount of approximately $10,000.00. This savings account was represented by Savings Bank Book No. 3375. The plaintiff claims these funds by reason of an alleged gift *causa mortis*. The defendant, Fidelity Bank of Durham, is merely a stakeholder and has no interest in this controversy.

Plaintiff introduced evidence tending to prove her allegations of a gift *causa mortis* of the funds held by the defendant, Fidelity Bank of Durham, represented by the Savings Bank Book No. 3375, issued by the bank to Joanna Leathers.

Defendant Leon W. Powell, administrator of the estate of Joanna Leathers, filed an answer and denied the material allegations of the complaint, and by way of further answer and defense, cross-complaint and cross-action, alleged the plaintiff was not entitled to any of the property belonging to the estate of Joanna Leathers; further alleging that the plaintiff wrongfully and unlawfully took possession of an automobile, household goods and kitchen furniture, jewelry, personal effects and other personal property of an alleged value of $2,000.00, owned by Joanna Leathers at the time of her death; and that if plaintiff obtained possession of any property of Joanna Leathers, deceased, it was by wrongful, coercive, improper and unlawful means and as a direct result of undue influence exerted by the said Mattie Bynum upon her.

The court submitted the following issues:

"1. Did the deceased, Joanna Leathers, during her lifetime give the savings bank deposit in controversy to the plaintiff, Mattie Bynum, as a gift *causa mortis,* as alleged in the complaint? Answer: 'Yes.'

"2. If so, was the alleged gift of such savings bank deposit procured by undue influence exercised upon the decedent, Joanna Leathers, by

the plaintiff, Mattie Bynum, as alleged in the answer? Answer: 'No.'

"3. Did the plaintiff, Mattie Bynum, convert to her own use household goods and wares belonging to the decedent, Joanna Leathers, as alleged in the answer? Answer: 'Yes.'

"4. If so, what was the market value of such household goods and wares at the time of such conversion? Answer: '$350.00.' "

From the judgment on verdict defendant Leon W. Powell, administrator of the estate of Joanna Leathers, deceased, appealed to the Supreme Court and assigns error.

*Fred C. Owen, John D. McConnell and Victor S. Bryant for plaintiff.*
*Hedrick & Hall, C. V. Jones and R. M. Gantt for defendant Leon W. Powell, administrator.*

DENNY, J. We have examined the exceptions to the admission of evidence. In some instances evidence of like import was admitted without objection. In other instances the evidence was not such as would likely affect materially the results of the trial. On the record as a whole these exceptions fail to point to prejudicial or harmful error. Neither can the exceptions to his Honor's charge be sustained.

The only serious question for our consideration is as to the sufficiency of the evidence on the question of delivery.

The essentials of a gift *causa mortis* are set forth in Mordecai's Law Lectures, Vol. 2, at p. 1285, as follows: "There are three essentials to such a gift: (1) The gift must be with the view to the donor's death; (2) it must be conditioned to take effect only upon the death of the donor by his existing disorder; (3) there must be a delivery of the subject of the donation."

The appellant concedes that the plaintiff offered sufficient evidence to meet the 1st and 2nd essential requirements to establish a gift *causa mortis*. Therefore we must consider the evidence offered to prove the 3rd essential requirement of a gift *causa mortis*, namely, the delivery of the alleged gift.

Mary Johnson testified that she was in the home of Joanna Leathers late in the afternoon the day before Joanna went to the hospital, where she died seven or eight days later. That Joanna told her she was going to the hospital. That while she was there Joanna called Mattie Bynum into the room and told her to sit down. That Joanna Leathers was propped up in bed. That Joanna Leathers said: "Mattie, I have something to tell you." Mattie said: "Yes, Ma'am," and Joanna said: "I have made up my mind to go to the hospital," and Mattie said: "You have, Mamma?" and Joanna said: "Yes, I am going, but I am not coming back the way I am going."

This witness further testified that Joanna Leathers then directed Mattie to get her pocketbook, which contained certain keys. That upon delivery of the pocketbook Joanna took out a bunch of keys and said, "Mattie, these are your keys, don't you give these keys to nobody, don't you let nobody have them." Mattie Bynum was instructed in the presence of the witness to get a tin lock box out of the closet in the room which Joanna Leathers then occupied. The box was placed on Joanna's lap and while the box was resting on her lap Joanna said: "Mattie, everything in this box is yours and this key unlocks this box and in this box it is that little box you sent to Pa, in that box is a little wooden box, the deed is in that, and in the box you sent to Pa, the big bank book and the little bank book is in there." The keys were placed in Mattie Bynum's hand by Joanna Leathers. Joanna still held the box on her lap when another neighbor, Estelle Cameron, came into the bedroom. Joanna told her of her plans to go to the hospital and stated that she had given Mattie her keys and that "Everything in that box is Mattie's." She then again described what was in the box. About that time Dr. Bowles rang the doorbell. According to this witness, Joanna said in a low tone, "Mattie, take the box and wrap it up and put it back in the closet."

Estelle Cameron testified that Joanna said: "Take the box and put it up."

Dr. F. N. Bowles testified that Joanna said on this particular occasion that she had decided she would go to the hospital and that "She wanted me to look after her and not to worry about my money, that she had given all of her things to Mattie and that Mattie would see that I got paid." That Mattie had some keys but that he did not see the box.

One of the leading cases in this State on the subject of gifts *causa mortis* is *Newman v. Bost,* 122 N. C., 524, 29 S. E., 848. In that case the donor gave the donee certain keys and said: "What is in this house is yours," and at another time "What property is in this house is yours." A bureau in which was found a life insurance policy after the death of the donor was present in the room when the keys were handed to the donee. The Court said in that opinion: "It being claimed and admitted that the life insurance policy was present in the bureau drawer in the room where it is claimed the gift was made, and being capable of actual manual delivery, we are of the opinion that the title to the insurance policy did not pass to the plaintiff, but remained the property of the intestate of the defendant. But we are of the opinion that the bureau and any other article of furniture, locked and unlocked by any of the keys given to the plaintiff, did pass and she became the owner thereof. This is upon the ground that while these articles were present, from their size and weight they were incapable of actual manual delivery,

and that the delivery of the keys was a constructive delivery of these articles, equivalent to an actual delivery if the articles had been capable of manual delivery." Also: "The safe and box, in *Thomas v. Lewis, supra* (37 Am. St. Reports, 878), were not present, so that the contents could not have been taken out and delivered to the donee by the donor. The ordinary use of a stand of bureaus is not for the purpose of holding and securing such things as a life insurance policy, though they may be often used for that purpose, while a safe and box deposited in the vault of a bank are. A bureau is an article of household furniture, used for domestic purposes, and generally belongs to the ladies' department of the household government, while the safe and box in *Thomas v. Lewis* are not. The bureau itself, mentioned in this case, was such property as would be valuable to the plaintiff."

As stated in the above case, a bureau drawer is not ordinarily used for the purpose of holding valuable papers, but small tin lock boxes are, in fact they are used primarily for that purpose. The delivery of a lock box and the keys thereto by a donor to a donee, together with a recital of the contents of the box and the statement that "Everything in this box is yours," would constitute delivery of the contents of the box, as required by the decisions of this Court. A discussion of the many cases cited in the very thorough and able briefs filed by the attorneys for the respective parties in this action we deem unnecessary. Whether or not there was a delivery by Joanna Leathers to Mattie Bynum of the Savings Bank Book No. 3375, issued by the Fidelity Bank of Durham to Joanna Leathers, which book was contained in the tin lock box, was a proper question to be submitted to the jury.

Again, in *Newman v. Bost, supra,* the Court in discussing a gift of certain furniture to the plaintiff, as a gift *inter vivos,* said: "The intention to give this property is shown by a number of witnesses and contradicted by none. The only debatable ground is as to the sufficiency of the delivery. But when we recall the express terms in which he repeatedly declared that it was hers; that he had bought it for her and had given it to her; that it was placed in her private chamber, her bedroom, where we must suppose that she had the entire use and control of the same, it would seem that this was sufficient to constitute a delivery. There was no evidence, that we remember, disputing these facts. But if there was, the jury have found for the plaintiff, upon sufficient evidence at least to go to the jury, as to this gift and its delivery." And "It is held that the law of delivery in this State is the same in gifts *inter vivos* and *causa mortis.*"

We think the plaintiff offered sufficient evidence on the question of the delivery of the keys to the lock box, the lock box and its contents to the plaintiff, to go to the jury on the question of the delivery of the

savings bank deposit in controversy, represented by a savings account book in the lock box. The jury found for the plaintiff as to the gift and its delivery. The other exceptions are not of sufficient merit to disturb the verdict of the lower court.

In the trial below we find

No error.