DANIEL W. BALL, administrator, *vs.* FLORENCE E. FORBES.

Middlesex.   May 3, 4, 1943. — June 28, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Gift. Joint Tenants. Bank and Banking. Personal Property, Joint tenancy. Practice, Civil, Charge to jury.*

The mere facts, that a depositor in a savings bank transferred the account to the names of himself and another "as joint tenants, either to draw, survivor to take all," and that the new joint tenant accompanied the original depositor to the bank and signed a card there, while they established a contract conclusive as between those parties and the bank even though the original depositor retained control of the deposit book, did not preclude the representative of the estate of the original depositor from showing by attendant facts and circumstances that he had not intended thereby to make a completed present gift of a joint interest in the account.

At the trial of an action by an administrator, where an issue was, whether the plaintiff's intestate, in transferring a deposit in a savings bank from his own name to those of himself and another as joint tenants, "survivor to take all," had intended to make a present gift or merely a transfer not to take effect until his death, it was error to instruct the jury categorically that there was a present gift.

CONTRACT. Writ in the Superior Court dated January 7, 1941.

The case was tried before *Dowd*, J.

*P. C. Hanna*, for the plaintiff.

*J. F. Thistle*, for the defendant.

DOLAN, J. This is an action of contract brought by the administrator of the estate of James Edward Bronson, also called Edward Bronson, for money had and received to the use of the plaintiff. The case was referred to an auditor and was subsequently tried before a jury on the auditor's report and other evidence.

The findings of the auditor are summarized in the record, and are, in substance, as follows: In January, 1936, the intestate caused a savings bank deposit, which stood in the name of his deceased wife, to be transferred to the defendant and himself "as joint tenants — either to draw — survivor to take all." In the same month he caused another savings bank account, which stood in the name of his deceased wife, to be changed so that the caption read: "In account with Oct. 10, 1929 James E. Bronson, Jan. 16, 1936 or Florence E. Forbes. Payable to either or the survivor." In the same month the intestate opened a new account in a savings bank, "In account with James E. Bronson or Florence E. Forbes. Payable to either or survivor." On February 6, 1936, a new account was opened in another savings bank, "In account with — joint account. To be drawn by either party or the survivor of them James E. Bronson or Florence E. Forbes." In each instance the defendant accompanied the intestate and signed a card at the bank. Except in one instance of a withdrawal of $100 made by the defendant at the request of the intestate, the latter made the withdrawals himself from the four banks, one hundred five in all, and used the sums withdrawn for his own living and household expenses. The defendant "never exercised any authority over the accounts to draw money as her own or for her own personal purposes" prior to the death of the intestate.

The transfers in question were made and the new accounts opened within two months after the death of the wife of the intestate. He wanted the defendant to continue as his housekeeper as long as he lived. She was willing provided he paid her $20 a week and made his property holdings joint with her, "so that upon his death she would become the sole owner of such balances as there would be then in the accounts and also of the real estate." The intestate agreed, and the transfers were made and the new accounts opened in pursuance of the agreement. At the time of the death of the intestate the balances in the accounts in question aggregated about $6,166. Shortly after his death the defendant withdrew all the deposits with the

exception of about $343. The auditor further found that, in "making his real estate and bank accounts joint holdings of himself and the defendant," the intestate thought that he was making a prudent arrangement for his own future comfort and well being, and that "the conditions that the defendant required before she would commit herself to her side of the bargain were fully understood by him and met with his approval." The auditor further found that when the intestate made the bank accounts joint with the defendant "he intended to make a perfected present gift to the defendant of an interest in the accounts," and found for the defendant on each of the four counts of the declaration.

At the trial before the jury the defendant testified, in substance, that the agreement between her and the intestate was entered into shortly after the death of the wife of the intestate in December, 1935; that she agreed to stay with the intestate, "as housekeeper or nurse as long as he lived, and take care of him sick or well, she to receive two dollars a day for her services as housekeeper or twenty dollars a week for services as a nurse during his lifetime, and upon his death if she survived him, she was to have all his property. . . . [that] he was willing to leave her everything and as a result of this understanding between them and intending to carry it out" the accounts were made joint "either to draw, survivor take all"; that "It was Mrs. Bronson's wish" that after her death the defendant should stay on, "and it was Mr. Bronson's wish and what remained if I outlived them was to come to me and was mine." The intestate and the defendant each had a key to "the tin box where the bank books were kept at all times."

At the close of the evidence the plaintiff requested the judge to instruct the jury as follows: "4. If it is found the said Bronson transferred the several bank accounts involved in this action, or any of them, to a joint account with defendant and himself intending thereby to give the defendant an interest therein upon and only in the event that she survived him, then such an undertaking is void for lack of a writing. 5. If the said James E. Bronson, also called

James Edward Bronson told the defendant his reason for making the said accounts joint was, 'If I took care of him sick or well, and outlived him what was left was to come to me', then such an agreement not being in writing was in violation of the law and void." During the course of his charge to the jury the judge instructed them in part, in substance, that the case is not one of an attempted gift of property, but is one where the intestate through a novation had made a new contract with the savings bank by which either he or the defendant "could draw such sums as either . . . chose during . . . [the] joint lives, and the balance was to be withdrawn by, and so was to belong to, the survivor"; that in "such a case there is nó gift of the balance upon the death of [the depositor] . . . [that] there is no gift in this case of the balance upon the death of Bronson. The gift was made before his death . . . [that the defendant] when she survived Bronson — 'became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on . . . [Bronson's] death'"; that "that is the law"; that it was "all a pure question of fact . . . that as sensible, reasonable men" the jury were to determine; and that if the jury believed the defendant's story they would be warranted in finding that title is in her and their finding would be for the defendant.

The plaintiff excepted to the instruction that the gift was made before the death of the intestate and to the refusal "by implication" of the plaintiff's fourth and fifth requests for instructions to the jury. The jury returned a verdict for the defendant on each count of the declaration, each deposit in question having been made the subject of a separate count.

The principles governing the determination of title to so called joint accounts have been considered in many previous decisions of this court. Those principles have been stated with citation of authorities in *Goldston* v. *Randolph*, 293 Mass. 253, and later discussed in *Castle* v. *Wightman*, 303 Mass. 74. It is settled that, while the contract of deposit is conclusive as between the parties and the bank, and that

the contract with the bank takes the place of delivery ordinarily required, and that a present gift could thus be made if that result was intended even though the deceased retained control of the books evidencing the deposits, nevertheless, as between the survivor and the representative of the estate of the deceased, it is still open to the latter to show by attendant facts and circumstances that the deceased did not intend to make a present completed gift of a joint interest in the account, and that the mere form of the deposits does not settle the matter. For instances where it has been decided that the requisite intent to make a present gift of a joint interest in such deposits or other personalty denominated as held in joint ownership had not been established by the facts attendant upon the creation of the purported joint interests, see *Moreau* v. *Moreau*, 250 Mass. 110, 112; *Lukey* v. *Parks*, 279 Mass. 244; *Eddy* v. *Eddy*, 281 Mass. 156; *Splaine* v. *Morrissey*, 282 Mass. 217, 223; *Greeley* v. *O'Connor*, 294 Mass. 527, 533.

There was no error in failing to instruct the jury in accordance with the plaintiff's fifth request, which was based on but a fragment of the evidence. And the judge was not required to instruct the jury in accordance with the precise language of the plaintiff's fourth request. The question for determination was whether the intestate in creating the accounts intended to make a present gift of a joint interest therein to the defendant which would ripen into full ownership by her upon the death of the intestate in case she survived him. Such a gift, made in the lifetime of the intestate, is not testamentary in character. *Goldston* v. *Randolph*, 293 Mass. 253, 257. It is settled that it is not error for a judge to fail to instruct the jury in the terms of a requested instruction, even if it is correct as matter of law and applicable to the pleadings and evidence, if the subject matter thereof is dealt with adequately in the charge. *Squires* v. *Fraska*, 301 Mass. 474, 477, and cases cited. *Greeley* v. *O'Connor*, 294 Mass. 527, 533. The fourth request was sufficient to direct the attention of the judge to the element of intention so important in cases such as this. But in submitting the case to the jury, the judge, appar-

ently overlooking that element of intention, instructed them categorically that the case was not an attempted gift of property, but was one arising out of a novation through a new contract made by the intestate with the banks, by virtue of which the defendant and the intestate could draw such sums as they saw fit during their joint lives, and that the balance was to be drawn by and so was to belong to the survivor, the defendant; that the gift was made before the death of the intestate, and that the defendant became the owner of the balance undrawn by virtue of the contract of deposit and not by virtue of a gift that took effect on the intestate's death.

These instructions were erroneous as matter of law, since they attributed to the mere form of the contract a conclusiveness as between the parties (other than the bank) which, it is settled by what we have already said, does not exist. The instructions overlooked the necessity of a finding by the jury of the requisite intention of the intestate to make a present perfected gift of a joint interest in the accounts in question, as distinguished from a gift that was not intended to take effect as to any interest in the present, but rather was to take effect as of some future time and then only upon the performance of certain conditions. Moreover, the instruction of the judge that the gift was made before the death of Bronson, was, in effect, an instruction that this decisive question of fact was established. That question, of course, was for the jury to decide on all the evidence, and not for the judge.

It follows that the plaintiff's exceptions to the judge's charge must be sustained.

*So ordered.*