ETHEL BUFFALOE AND R. CARLTON STUART, EXECUTORS OF THE ESTATE OF DAVID THOMAS BARNES, DECEASED, v. ZELDA BARNES, ROSSIE MAE BARNES, MRS. NANCY BARNES STUART, ETHEL BUFFALOE, MRS. RUTH BUFFALOE WILSON, KATIE BUFFALOE AND NORMAN B. BUFFALOE.

(Filed 8 May, 1946.)

1. Gifts § 1—

In order to constitute a gift *inter vivos* there must be an intent to presently pass title, and this intention must be consummated by delivery, actual or constructive, with consequent loss by the donor of dominion over the property given.

2. Same—

Ordinarily, when the purchaser of shares of stock has the certificate issued in the name of another, and so registered on the books of the corporation, though retaining possession of the certificate, the transaction constitutes a gift *inter vivos* consummated by constructive delivery, but such transaction does not operate as a gift *inter vivos* when the name of such other is inserted for the convenience of the purchaser, donative

intent is not established, or where the donor has not divested himself of right and title to the stock and of all dominion and control over it.

## 3. Partition § 1a—

The right to partition, G. S., 46-42, applies to joint tenants as well as to tenants in common, and the owner of stock as joint tenant has the right at any time to have his interest therein segregated by partition.

## 4. Gifts § 1—

The fact that the purchaser of stock has the certificate issued in the name of himself and another with words purporting to create a joint tenancy with right of survivorship, does not conclusively establish donative intent which is essential to a valid gift *inter vivos*, but such intent must be determined by consideration of all the attendant facts and circumstances.

## 5. Same: Executors and Administrators § 9—Act of uncle in having stock certificate issued in name of himself and niece held not to show as matter of law, upon facts agreed, donative intent and delivery.

The facts agreed disclosed the following: Testator paid for certain stock with his own funds and had the certificates issued to himself and niece "as joint tenants with right of survivorship, and not as tenants in common." Testator received a dividend on the stock and had the certificates in his exclusive possession at the time of his death. *Held:* The testator had the right at any time to segregate his interest therein by partition, and he thus retained control over the shares of stock, at least as to one-half interest therein, and the facts agreed are insufficient to support, as a conclusion of law, that a present gift was intended at the time of the issuance of the certificates, and therefore the facts agreed are insufficient to uphold, upon the ground of a gift *inter vivos*, the trial court's conclusion that the niece was the sole owner of the stock.

## 6. Wills § 3: Gifts § 4: Trusts § 3a—

The facts agreed disclosed that testator paid for certain stock with his own funds and had the certificates issued to himself and niece as joint tenants with right of survivorship, but had the stock in his exclusive possession at the time of his death. *Held:* The transaction does not constitute a testamentary disposition of the stock, nor a gift *causa mortis*, nor create a trust.

## 7. Same: Brokers § 3—

Testator purchased certain stock through a broker and directed the broker to have the certificate issued in the name of himself and niece with right of survivorship, but died before the stock was issued by the transfer agent. *Held:* The agency of the broker was revoked by the death of his principal, and the transaction not having been consummated, the executor is entitled to the stock as against the niece.

## 8. Executors and Administrators § 15k—

In the absence of a contrary testamentary provision, Federal Estate taxes should be paid out of the general funds of the estate and not charged against the individual beneficiaries.

**9. Executors and Administrators § 15m:  Wills § 46—**

The cost of repairs to real property which are ordered by testator or by his authorized agent, and which are completed prior to his death, are chargeable against the executors; but other repairs made after testator's death when title had vested in the devisees, in the absence of a finding or evidence that they had been contracted for by testator or someone authorized by him, are chargeable against the devisees.

BARNHILL, J., dissenting in part.

SEAWELL, J., concurs in dissent.

APPEAL by defendants Ruth Buffaloe Wilson, Katie Buffaloe and Norman B. Buffaloe from *Grady, Emergency Judge,* at September Term, 1945, of WAKE.  Modified and affirmed.

This was an action by the executors of the will of David T. Barnes, deceased, under the Declaratory Judgment Act, for advice and direction in the administration of the estate.  The devisees and legatees are made parties defendant.  All are of full age.

The cause was submitted to the court for decision of certain questions of law based upon an agreed statement of facts.  The admitted facts pertinent to the inquiry were substantially these:

David T. Barnes died 23 August, 1944, leaving a last will and testament wherein he named the plaintiffs executors, and made numerous devises and bequests to his nieces and a nephew of his real and personal property.  The residuary legatees were the appellants, Ruth Buffaloe Wilson, Katie Buffaloe, Norman B. Buffaloe, and the plaintiff Ethel Buffaloe.  Advice of the court was sought as to five specific matters, as follows:

1. On 14 June, 1944, the testator with his own funds purchased 70 shares of the preferred stock of the Carolina Power & Light Co. for $8,261 and had the stock certificates issued to "David T. Barnes and Rossie Mae Barnes as joint tenants with right of survivorship, and not as tenants in common."  The certificates were delivered to the testator and by him placed in his safety deposit box.  A dividend paid on the stock was received by the testator.  Rossie Mae Barnes now claims these shares of stock free of any claim of the executors.

2. On 16 August, 1944, the testator authorized a broker to purchase for him 15 additional shares of the preferred stock of Carolina Power & Light Co. and issued his check in payment therefor $1,777.50 with instructions that the certificate be issued in name of "David T. Barnes and Rossie Mae Barnes as joint tenants with right of survivorship and not as tenants in common."  The broker purchased the shares 18 August, and later mailed the old certificate to the Wachovia Bank & Trust Co., the transfer agent, for issuance of new certificate as instructed.  The old

certificate reached the transfer agent 23 August, at which time it was ascertained that David T. Barnes was dead, and the transfer agent notified the broker the certificate could not be issued as directed. Subsequently the broker, who had delivered the old certificate to the transfer agent, instructed the transfer agent to issue the new certificate to Rossie Mae Barnes, which was done. Rossie Mae Barnes refuses to surrender the 15 shares of stock, claiming them as her own.

3. The third question presented was whether the devise of a certain store house and lot carried with it the adjoining lot which was originally included in the deed to the testator. It was held that the lot was included in the devise, and no exception having been noted, this item may be eliminated from further consideration.

4. The fourth question was whether the amount of the Federal Estate tax of $604 should be paid by the executors out of general funds of the estate, or charged against the individual beneficiaries. The North Carolina inheritance tax was admittedly chargeable against the individual beneficiaries.

5. Repairs upon real property of testator which passed under his will to named devisees were undertaken as follows:

(a) To house on Bloodworth Street ordered 16 August, 1944, materials furnished 21 August, $136.20, other materials furnished 31 August and 1 September, $29.68. Work started 28 August, completed 1 September; cost of labor $142.60.

(b) Painting house on Bloodworth Street, ordered 19 August, 1944, work started 28 August, completed 1 September—cost $195.00.

(c) Concrete sidewalk and driveway to house on Bloodworth Street, ordered 21 August, 1944, started 28 August, 1944, completed 31 August, cost $138.50.

(d) Concrete sidewalk and driveway to lot on Harrington and Jones Streets, ordered 18 August, started 21 August, completed 22 August, cost $164.00.

(e) Repairs to house on Lane Street, ordered 21 August, completed 23 August, cost $6.50.

Total cost of repairs $812.48.

Upon the facts so agreed, the court was of opinion, and so adjudged:

1. That the 70 shares of preferred stock referred to were the sole property of Rossie Mae Barnes.

2. That the 15 shares of preferred stock were the sole property of Rossie Mae Barnes.

3. That the devise of the house and lot referred to in the third question included the entire lot originally conveyed to the testator. No exception was noted to this ruling.

4. That the Federal Estate tax be paid by the executors out of the funds of the estate.

5. That all the repairs upon property of testator be paid by executors out of the general funds.

It was admitted that if the court's rulings prevailed there would be no residuum but a deficit in the estate. The appellants, the residuary legatees, excepted to the rulings of the court as to (1) the 70 shares of stock, (2) the 15 shares of stock, (3) the Federal Estate tax, and (4) the charges for repairs.

From the judgment rendered defendants, Ruth Buffaloe Wilson, Katie Buffaloe and Norman B. Buffaloe, appealed.

*J. L. Emanuel and W. Carey Parker for Executors of Estate of David T. Barnes.*

*Brassfield & Maupin for Rossie Mae Barnes, appellee.*

*T. Lacy Williams for Ruth Buffaloe Wilson, Katie Buffaloe and Norman B. Buffaloe, appellants.*

DEVIN, J. The judgment appealed from was rendered upon an agreed statement of facts in an action for advice and direction in the administration of the estate of David T. Barnes under his will. The appellants, who are the residuary legatees named in the will, assign error in the judgment in four particulars, which will be considered in order.

1. The trial judge was of opinion and so adjudged upon the facts agreed that upon the death of David T. Barnes the defendant Rossie Mae Barnes became the sole owner of 70 shares of preferred stock in the Carolina Power & Light Co., the certificates representing these shares having been issued in the names of "David T. Barnes and Rossie Mae Barnes as joint tenants with right of survivorship, and not as tenants in common."

It was admitted the testator paid for the shares from his own funds and had the certificates in his exclusive possession at the time of his death. No other fact appears in addition to the admission that the certificates were issued in accordance with the expressed instructions of the testator. There was no consideration from Rossie Mae Barnes; nor agreement between the parties in relation to the stock. A dividend on the shares of stock was received by the testator.

Rossie Mae Barnes bases her claim to the 70 shares of stock on the ground that the transfer of these shares under the circumstances constituted a gift *inter vivos,* and that upon the death of David T. Barnes in accord with the stipulation appearing on the face of the certificate she became sole owner by survivorship. The appeal presents the question

whether the facts agreed are sufficient to establish her ownership of these shares consequent upon a valid gift *inter vivos*.

To constitute a gift there must be an intention to give, and the intention must be consummated by a delivery of, and loss of dominion over, the property given, on the part of the donor. *Jones v. Fullbright,* 197 N. C., 274, 148 S. E., 229; *Nannie v. Pollard,* 205 N. C., 362, 171 S. E., 341. To complete a gift *inter vivos* there must be first the intention to give and then the delivery "as it is the inflexible rule that there can be no gift either *inter vivos* or *causa mortis* without the intention to give and the delivery." *Newman v. Bost,* 122 N. C., 524, 29 S. E., 848; *Bynum v. Bank,* 221 N. C., 101, 19 S. E. (2d), 121. "In order to a valid gift of personal property *inter vivos* there must be an actual or constructive delivery with present intent to pass the title." *Parker v. Mott,* 181 N. C., 435, 107 S. E., 500. Donative intent is an essential element. 24 A. J., 738, 770. To constitute delivery of shares of stock as the consummation of a valid gift *inter vivos* the donor must divest himself of all right and title to the stock and of all dominion over it. *Phillips v. Plastridge,* 107 Vt., 267; 99 A. L. R., 1074; *Payne v. Tobacco Trading Corp.,* 179 Va., 156, 18 S. E. (2d), 281; *Pomerantz v. Pomerantz,* 19 A. (2d), 713 (Md.). There must be an intention to make a present gift accompanied by a delivery of the thing given or the means of obtaining it. *Payne v. Tobacco Trading Corp., supra; Pomerantz v. Pomerantz, supra.* It cannot be made to take effect in the future. *Askew v. Matthews,* 175 N. C., 187, 95 S. E., 163. The transaction must show a completely executed transfer to the donee of the present right of property and the possession. *Thomas v. Houston,* 181 N. C., 91, 106 S. E., 466. Doubts must be resolved against the gift. *Figuers v. Sherrell,* 178 S. W. (2d), 629. In *Grissom v. Sternberger,* 10 F. (2d), 764, the certificates, with proper assignment, were delivered to the donee.

The general rule is that where the owner or purchaser of shares of stock has the certificate therefor issued in the name of another, and so registered on the books of the corporation, though retaining possession of the certificate, nothing else appearing, the transaction is regarded as a gift completed by constructive delivery. *Simonton v. Dwyer,* 167 Or., 50; 99 A. L. R., 1080, and cases cited. But the rule is otherwise where the name of another is inserted in the certificate for the owner's convenience, *Getchel v. Bank,* 94 Me., 452; 24 A. J., 771; or where the donor has not divested himself of right and title to the stock and of all dominion and control over it, *Phillips v. Plastridge, supra; Payne v. Tobacco Trading Corp., supra; Schoenheit v. Lucas,* 44 F. (2d), 476 (484); *Decker v. Fowler,* 199 Wash., 549; or where donative intent is not established. *Southern Industrial Institute v. Marsh,* 15 F. (2d), 347; *Trenton Savings Fund Society v. Byrnes,* 110 N. J. Eq., 617;

BUFFALOE *v.* BARNES.

*Hudgens v. Tilman,* 227 Ala., 672; *Jones v. Jones,* 201 S. W., 557; *Frazier v. Okl. Gas & E. Co.,* 178 Okl., 512; *Hart v. Hart,* 272 Ky., 488; *Figuers v. Sherrell, supra,* 152 A. L. R., 429.

From an examination of the facts agreed in the case at bar, upon which alone the judgment was based, it would not seem to follow as a necessary conclusion of law that a present gift was intended. The interest in the stock which might accrue to Rossie Mae Barnes depended upon a contingency. The donor retained possession of the certificates, the evidence of title, and received the dividends. Though the certificates were in the names of both as joint tenants, the testator had the right at any time to segregate his interest therein by partition. G. S., 46-42. This statute applies to joint tenants as well as tenants in common. The right of control over the shares of stock at least as to one-half interest therein was retained by the testator.

Somewhat similar questions relating to gifts *inter vivos* of shares of stock were considered by this Court in *Jones v. Waldroup,* 217 N. C., 178, 7 S. E. (2d), 366. In that case Waldroup had the certificate for shares of stock in Blue Ridge Building and Loan Association issued in name of "R. M. and H. L. Waldroup (his wife), either or survivor," and delivered the certificate to his wife. After Waldroup's death his administrator brought suit for these and other shares of stock. The trial court's peremptory instructions to the jury in favor of the husband's administrator were held for error and a new trial was awarded. It was said by *Justice Seawell,* writing the opinion for the Court, that while survivorship as a legal incident to a joint tenancy was abolished by statute (G. S., 41-2), that did not prevent persons from making agreements as to personalty such as to make the future rights of the parties depend upon the fact of survivorship, citing *Taylor v. Smith,* 116 N. C., 531, 21 S. E., 202. It was said that the position of the wife was stronger because Waldroup had required the issue of new certificates of stock to himself and wife and had them so registered on the books of the corporation "under circumstances which might be evidence of a gift *inter vivos,* creating an estate for the common enjoyment of himself and wife, with right of survivorship upon the death of one of them." In the case at bar, however, we have neither the verdict of a jury nor other definite determination of permissible inferences of fact which would compel a conclusion in accord with the appellee's contention. *Rewis v. Ins. Co., post,* 325.

In *Gwinn v. Commissioner of Internal Revenue,* 287 U. S., 222, referring to a joint tenancy in property in a tax case, the Court said: "Although the property here involved was held under a joint tenancy with the right of survivorship created by the 1915 transfer, the rights of the possible survivor were not then irrevocably fixed since under the state

law the joint estate might have been terminated through voluntary conveyance by either party, through proceedings for partition, or by an involuntary alienation under an execution." The decisions in *Ervin v. Conn* and *Bank v. Frederickson,* 225 N. C., 267, relating to provisions for payment of U. S. Bonds, were controlled by the pertinent Acts of Congress under the Federal Constitution.

This subject was discussed in a recent case decided by the Supreme Court of Oregon, *Manning v. U. S. National Bank of Portland,* 148 P. (2d), 255. In that case it appeared that Edward D. Hendricks endorsed on old certificates an assignment of 100 shares of stock "to Edward D. Hendricks and Margaret M. Hendricks," and instructed the issue of a new certificate in the names of "Edward D. Hendricks and Margaret M. Hendricks, and upon the death of either, the survivor of either." The new certificate, issued as instructed, was read over and delivered to Mr. and Mrs. Hendricks, and both signed the receipt therefor. The certificate was handed to Mr. Hendricks and he and his wife left the bank, he saying, "I will put this away." After the death of Mr. Hendricks the title of Mrs. Hendricks to the shares of stock was upheld as a gift *inter vivos.* The Court said: "There is uncontradicted oral evidence tending to indicate that the stock was transferred with donative intent, but we consider the written instruments decisive on that issue. . . . The execution of the joint receipt constitutes evidence of delivery to and acceptance by both." The distinction between the facts in that case and in our case is apparent.

In *Matthew v. Moncrief,* 135 F. (2d), 645, involving a joint savings account, the gift was upheld upon the ground that there was an agreement contractual in form signed by donor and donee at the inception of the deposit.

The donative intent, which is uniformly held to be one of the necessary elements to constitute a valid gift *inter vivos,* is not conclusively established by the use of words in the face of a certificate of stock purporting to create a joint tenancy with right of survivorship. To determine the requisite intent to make a present gift of a joint interest requires consideration of all the facts attendant upon the creation of the purported interest. *Ball v. Forbes,* 314 Mass., 200. This view is in accord with decisions from other jurisdictions.

In *Southern Industrial Institute v. Marsh,* 15 F. (2d), 347, it appeared that Marsh, the owner of certain shares of stock, directed that the certificate therefor be issued to the plaintiff Institute but returned to him, expressing the wish to make the delivery in person and to retain right to dividends. It was held that the transfer on the books of the corporation was only *prima facie* evidence of delivery and that it was still within his power to have the stock transferred back to himself without

consent of the Institute, and that under the evidence there was no intention unconditionally to surrender the stock.

In *Trenton Savings Fund Society v. Byrnes,* 110 N. J. Eq., 617, it was said: "The elements necessary to constitute a completed gift *inter vivos* are three; intent, delivery and acceptance." There the facts disclosed that a deposit was made in the bank in the name of depositor or her niece, with signature card reciting the money belonged "to us as joint tenants," with survivorship. It was held, upon the death of the original depositor, that the account did not pass to the niece as a gift, since the evidence did not show a donative intent *in praesenti* at time of the deposit. To the same effect is the decision in *Ball v. Forbes,* 314 Mass., 200.

In *Besson v. Stevens,* 94 N. J. Eq., 549 ·(568), it was held that an alleged gift *inter vivos* failed on account of absence of sufficient evidence of donative intent.

In *Hudgens v. Tillman,* 227 Ala., 672, where Hudgens had 60 shares of stock reissued in the name of his daughter and retained possession of the certificate, it was held the mere transfer of the stock on the books of the corporation was ineffectual to perfect the gift *inter partes* in the absence of proof of donative intent and constructive delivery.

In *Jones v. Jones,* 201 S. W. (Mo.), 557, where a father had certificate of shares of stock issued in the name of his son but retained the certificate, questions of donative intent and delivery were raised and these were decided by the jury in favor of the donee. While affirming the result the Court said it was not a sufficient delivery of stock for a party merely to have the stock transferred to the name of transferee, but in addition to this an actual or constructive delivery of the stock to the transferee was necessary to be shown.

In *Getchell v. Bank,* 94 Me., 452, where the husband had certificate for shares of stock issued in name of his wife, but kept the certificate, drawing the dividends, it was held this was not a gift made effectual by delivery. To the same effect is the holding in *Bowles v. Rutroff,* 216 Ky., 557.

From an examination of the record in the case at bar we are of opinion, and so decide, that the facts agreed, upon which the ruling appealed from was predicated, were insufficient to support the conclusion reached by the learned trial judge that Rossie Mae Barnes was the sole owner of the 70 shares of stock and that the executors had no interest therein. Nor can her claim be upheld as an attempted testamentary disposition of this property. *Stevenson v. Earl,* 65 N. J. Eq., 721. The transaction did not constitute a gift *causa mortis,* nor create a trust. *Manning v. U. S. Bank,* 148 P. (2d), 255.

11—226

We note that the appellants concede that Rossie Mae Barnes was entitled to one-half interest in the 70 shares of stock, upon the view that the statute (G. S., 41-2) converted the joint tenancy into tenancy in common, and that by virtue of his right to partition under G. S., 46-42, the testator retained control over the property to the extent of his interest therein.

The action of the executors in exchanging these shares of stock for another issue of preferred stock of the Carolina Power & Light Co., as tending to the advantage of those who should be adjudged the owners of the stock, was approved by the trial judge. No exception was taken to this ruling.

2. The testator purchased 15 additional shares of stock in the Carolina Power & Light Co. through a broker and directed the broker to have new certificate issued in the same manner and form as the 70 shares hereinbefore referred to, but died before the transaction was completed. The agency of the broker was revoked by the death of his principal, and the broker thereafter was without authority to direct the transfer agent to issue the certificate to Rossie Mae Barnes so as to divest the beneficial title of the executors to those shares which had been purchased by the testator. The transaction never reached the stage where the testator was in position to make a gift and the consummation of his expressed desire and the fulfillment of his instructions were prevented by his death. The executors were entitled to have the certificate for the 15 shares delivered to them by Rossie Mae Barnes. 38 C. J. S., 804. .

3. The ruling of the trial judge that the Federal Estate tax should be paid out of the general funds of the estate is affirmed. *Riggs v. Del Drago,* 317 U. S., 95. The general rule, in the absence of contrary testamentary provision, is that the ultimate burden of an estate tax falls on the residuary estate. 142 A. L. R., 1137, and cases cited.

4. Appellants' fourth exception is taken to the ruling of the court below that the cost of installations and repairs to real property devised under the will should be paid by the executors out of the general funds of the estate. This ruling was based on the ground that these repairs had been ordered prior to the death of the testator. In the facts agreed it is stated merely that these repairs were "ordered." But an inspection of the pleadings shows the orders for repairs were alleged to have come from R. Carlton Stuart, now one of the executors, who contended he had been authorized by the decedent. It appears that the construction of sidewalk and driveway to the property at corner of Harrington and Jones Streets, the repairs to roof of house on Lane Street, the furnishing of some materials for repairs to roof of home on Bloodworth Street, at an aggregate cost of $306.70, were all ordered and completed before the death of testator, and may be presumed to have been done with his con-

sent and for his benefit. But the cost of repairs to real property which had then vested in the devisees, made after his death, in the absence of a finding or evidence that the work had been contracted for by the testator or by one authorized by him to do so, would not be chargeable to the executors, but to those to whom the title to the property had descended. The court's ruling on this point is to this extent modified.

We conclude that the judgment below as modified in the respects and as to the particulars herein pointed out should be affirmed, and it is so ordered.

Modified and affirmed.

BARNHILL, J., dissenting in part: I am concerned only about the first question presented by this appeal and the disposition thereof by the majority. If I interpret the opinion correctly it, in effect, directs judgment that the 70 shares of preferred stock in the Carolina Power & Light Company are the property of the estate, free of any claim of Rossie Mae Barnes, except as to the one-half interest conceded by appellees. I am unable to concur in this disposition of that phase of the case.

While judgment for the executor will inure to the benefit of the other defendants, the only persons having a legal interest in this stock are the executor and Rossie Mae Barnes. Judgment as to the stock was entered in favor of Miss Barnes. The executor did not appeal. This would seem to settle the question.

If, however, the other defendants have such interest as entitles them to contest the ownership, then it is to be noted that they concede that Miss Barnes is entitled to one-half of the stock. This concedes donative intent and delivery and leaves for decision only one question: Is a joint tenancy created by contract enforceable in this State? This question is answered in *Taylor v. Smith,* 116 N. C., 531. *Jones v. Waldroup,* 217 N. C., 178, 7 S. E. (2d), 366.

The stock as transferred on the books of the company creates an estate for the common enjoyment of the joint tenants with the right of survivorship upon the death of either. When the testator directed that it be purchased and so transferred he put it beyond his power to recall the gift or to sell, pledge, or give it away without the consent of the other joint owner.

"There is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation and not delivered to the donee." Cases cited, Anno. 99 A. L. R., 1080. Wherever it has been held to the contrary, decision was made to turn upon some

additional, unusual circumstance which definitely disclosed that the donor at the time had no present intent to make a gift.

If, however, the inference of constructive delivery with donative intent does not follow as a matter of law, it is strongly indicated as an ultimate fact. Certainly the facts and circumstances are such as to permit that conclusion.

In this connection, in my opinion, the fact the testator had the right to petition for partition has no bearing on the question of delivery and does not vary the general rule that transfer on the books of the company constitutes constructive delivery. The right to partition is purely statutory and not contractual. It resided in the testator so long as he lived whether he held the certificate or not and without regard to the portion of the purchase price paid by him. The estate created and not the retention of the certificate gave him the right.

Nor is the receipt of a dividend significant. It was payable to the joint owners, was endorsed by the donee, and by her delivered to the testator.

Putting all else aside and coming to the disposition made of this part of the case we have this situation. The executor of an estate comes into court seeking advice and counsel respecting conflicting claims which have arisen in the administration of the estate. He and the devisees who are the only interested parties agree on and stipulate certain facts. In so doing they fail to stipulate as to the crucial, decisive, ultimate fact to be inferred from the facts agreed.

Did the testator with donative intent make actual or constructive delivery of the Carolina Power & Light stock? This is the decisive question. The answer is an inference of fact, pro or con, to be drawn from the facts and circumstances surrounding the transaction. As to this there is no stipulation.

The majority conclude that "it would not seem to follow as a necessary conclusion of law that a present gift was intended." It is then said, "We have neither the verdict of a jury nor other definite determination of permissible inferences of fact which would compel a conclusion in accord with the appellee's contention."

Having thus conceded that there are permissible inferences favorable to appellee yet undetermined, the Court strikes down the judgment in her favor and closes the door against her, not because the facts are against her but because sufficient facts to support a definite decision on the question presented were not stipulated.

This is not in accord with the procedure in such cases heretofore established by this Court. The cause should be remanded for further proceedings to the end the true facts may be fully ascertained and the executor correctly advised as to the ownership of the stock involved.

In principle, *Trustees v. Banking Co.*, 182 N. C., 298, 109 S. E., 6, is on all fours with this case. There the action was brought to recover the value of bonds delivered to defendant as bailee. Plaintiff alleged that defendant negligently failed to account therefor. The parties stipulated the facts and circumstances surrounding the bailment and the failure to account therefor, but failed to stipulate as to the crucial ultimate fact of negligence. The cause was remanded for further stipulation or trial by jury.

In *Briggs v. Developers*, 191 N. C., 784, 133 S. E., 3, heard on facts agreed, *Stacy, C. J.*, says: "We think the facts agreed are insufficient to warrant the court in declaring, as a matter of law, that the title offered is good and indefeasible." Judgment was not rendered or directed for defendants. The cause was remanded for further proceedings. See also *Weinstein v. Raleigh*, 218 N. C., 549, 11 S. E. (2d), 560.

If we are not to affirm, then we should follow the procedure established by these and other decisions of this Court and remand. I so vote.

SEAWELL, J., concurs in dissent.